ACCEPTED
08-21-00145-CV
EIGHTH COURT OF APPEALS
EL PASO, TEXAS
11/2/2021 2:51 PM
ELIZABETH G. FLORES
CLERK

## NO. 08-21-00145-CV

**IN THE EIGHTH COURT OF APPEALS
EL PASO, TEXAS**

FILED IN
8th COURT OF APPEALS
EL PASO, TEXAS
11/2/2021 2:51:42 PM
ELIZABETH G. FLORES
Clerk

**SCHNEIDER ELECTRIC USA, INC. d/b/a
SCHNEIDER ELECTRIC,**
*Appellant*

v.

**MARIA RAMIREZ,**
*Appellee*

On Appeal from the 327th District Court, El Paso, Texas
Cause No. 2019DCV3145
Judge Linda Yee Chew, presiding

## APPELLANT'S OPENING BRIEF

Andrew M. Gould
Texas State Bar No. 00792541
andrew.gould@wickphillips.com
Molly M. Jones
Texas State Bar No. 24100271
molly.jones@wickphillips.com
Dana M. Hilzendager
Texas State Bar No. 24106099
dana.hilzendager@wickphillips.com

**WICK PHILLIPS GOULD &
MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: 214.692.6200
Facsimile: 214.692.6255

Noemi Lopez
Texas State Bar No. 24078881
nlopez@raylaw.com

**RAY, PEÑA, MCCHRISTIAN, PC**
5822 Cromo Drive
El Paso, Texas 79912
Telephone: 915.832.7243
Facsimile: 915.832.7333

**ATTORNEYS FOR APPELLANT
SCHNEIDER ELECTRIC USA, INC.
d/b/a SCHNEIDER ELECTRIC**

**Appellant:**

Schneider Electric USA, Inc. d/b/a Schneider Electric

**Counsel for Appellant:**

Andrew M. Gould
Molly M. Jones
Dana M. Hilzendager
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204

Noemi Lopez
**RAY, PEÑA, MCCHRISTIAN, PC**
5822 Cromo Drive
El Paso, Texas 79912

**Appellee:**

Maria Ramirez

**Counsel for Appellee:**

Enrique Chavez, Jr.
Michael R. Anderson
Christine A. Chavez
**CHAVEZ LAW FIRM**
2101 Stanton Street
El Paso, Texas 79902

**Defendant (Trial Court):**

Aerotek, Inc.

**Counsel for Aerotek, Inc. (Trial Court):**

Christine E. Reinhard
Dylan A. Farmer
**SCHMOYER REINHARD LLP**
8000 IH 10 West, Suite 1600
San Antonio, Texas 78230

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................... i

TABLE OF CONTENTS.................................................................................. ii

INDEX OF AUTHORITIES............................................................................ iii

STATEMENT OF THE CASE..........................................................................1

STATEMENT REGARDING ORAL ARGUMENT ...............................................2

ISSUES PRESENTED....................................................................................3

STATEMENT OF FACTS ...............................................................................4

SUMMARY OF THE ARGUMENT ..................................................................6

ARGUMENT .............................................................................................. 7

CONCLUSION AND PRAYER .......................................................................12

APPENDIX ................................................................................................13

CERTIFICATE OF SERVICE .........................................................................15

CERTIFICATE OF COMPLIANCE .................................................................16

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Burton v. Freescale Semiconductor, Inc.*,
798 F.3d 222 (5th Cir. 2015) ................................................................. passim

*City of LaPorte v. Barfield*,
898 S.W.2d 288 (Tex. 1995)...................................................................8, 9

*Garza v. Exel Logistics, Inc.*,
161 S.W.3d 473 (Tex. 2005)...................................................................9, 10

*Mexican Ry. Co. v. Bouchet*,
963 S.W.2d 52 (Tex. 1998).................................................................. passim

*Nanez v. Swift Transportation Corp.*,
No. EP-07-CV-361-PRM, 2009 WL 10700191 (W.D. Tex. June 5, 2009)..........8

*Wingfoot Enterprises v. Alvarado,*
111 S.W.3d 134 (Tex. 2003)................................................................. 7, 10

**Statutes**

Tex. Lab. C. § 405.001.......................................................................1, 7
Tex. Lab. C. § 406.002.........................................................................7
Tex. Lab. C. § 408.001.........................................................................10
Tex. Rev. Civ. Stat. art. 8307c.............................................................8

**Rules**

Tex. R. App. P. 28.3(e)(1) ..................................................................... ii
Tex. R. App. P. 9.4(i)(B) ......................................................................16

## STATEMENT OF THE CASE

**Nature of the Case**

Appellee/Plaintiff Maria Ramirez ("Ramirez") brought a workers' compensation discrimination claim under Texas Labor Code Section 451.001 ("Section 451") against Appellant/Defendant Schneider Electric USA, Inc. ("Schneider Electric"). (CR 47.)

**Course of Proceeding**

Schneider Electric moved for summary judgment on the Section 451 claim solely on grounds that it did not provide Ramirez with workers' compensation benefits and, therefore, it could not be liable to her. (CR 85-104; Appx. Tab 2.) The trial court denied the motion but allowed Schneider Electric to seek a permissive appeal of the threshold issue. (CR 1035-37; Appx. Tab 1.) This Court granted the Petition for Permissive Appeal.

**Trial Court Order on Appeal**

Amended Order on Motions for Summary Judgment and Order Granting Schneider Electric's Motion for Permission to Appeal (*id.*)

## STATEMENT REGARDING ORAL ARGUMENT

Schneider Electric does not request oral argument in this appeal, unless a panel of Justices assigned to this matter believes it would assist in providing a more complete understanding of the legal arguments presented in this appeal.

## ISSUES PRESENTED

Whether Schneider Electric can be liable for Section 451 workers' compensation discrimination to a temporary worker on assignment who pursued workers' compensation benefits through her staffing agency employer and who was not covered by Schneider Electric's workers' compensation coverage?

## STATEMENT OF FACTS

Schneider Electric maintains a manufacturing facility in El Paso, Texas and contracts with staffing companies to supplement its workforce with temporary personnel. (CR 104; Appx. 2C.) Aerotek, Inc. ("Aerotek"), a staffing company, employed Ramirez and assigned her to provide temporary services at Schneider Electric's El Paso facility. (CR 102; Appx. 2B.) Aerotek provides its employees, including Ramirez, with workers' compensation coverage. (*Id.*) Schneider Electric provides such coverage to its own employees, but not to temporary staff, like Ramirez. (CR 104; Appx. Tab 2C.)

Ramirez filed a workers' compensation claim with Aerotek during her temporary work assignment at Schneider Electric. (CR 102; Appx. 2B.) Due to a serious safety infraction, Ramirez's assignment to Schneider Electric ended. (CR 104; Appx. Tab 2C.) Ramirez then brought claims for workers' compensation discrimination under Section 451 against Schneider Electric and Aerotek.[1] (CR 47.) The trial court dismissed the claim against Aerotek. (CR 1035-37; Appx. Tab 1.)

Schneider Electric sought summary judgment on the Section 451 claim, contending it could not be liable to Ramirez under Section 451 since it did not provide her workers' compensation coverage. (CR 85-104; Appx. Tab 2.) The trial

---

[1] Ramirez also filed other claims against Aerotek and Schneider Electric. (CR 39-53.) Aerotek removed the case to the U.S. District Court for the Western District of Texas, but Ramirez's Section 451 claims were severed and remanded back to state court. (CR 26-84.)

court denied Schneider Electric's motion. (CR 1035-37; Appx. Tab 1.) The trial court, however, permitted Schneider Electric to seek an appeal because the question of its liability under Section 451 to Ramirez—the sole remaining claim in the case—was a threshold, case-dispositive issue. (*Id.*) Schneider Electric filed a Petition in this Court for Permissive Appeal, and the Court granted the Petition. *See* September 24, 2021 Order.

## SUMMARY OF THE ARGUMENT

The trial court erred in denying summary judgment in Schneider Electric's favor. Schneider Electric cannot be liable to Ramirez under Section 451 as a matter of law because it did not provide workers' compensation coverage to her. *Mexican Ry. Co. v. Bouchet*, 963 S.W.2d 52, 56 (Tex. 1998) (non-subscribers to workers' compensation cannot be liable under Section 451 to an injured worker); *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 241-43 (5th Cir. 2015). For this reason, the trial court's order denying summary judgment should be reversed and Ramirez's Section 451 claim against Schneider Electric should be dismissed with prejudice.

# ARGUMENT

Schneider Electric has no liability to Ramirez under the anti-discrimination provisions of the Texas Workers' Compensation Act (the "Act") set forth in Section 451 because it does not provide her workers' compensation coverage under the Act.

The Act generally provides for various benefits to workers and companies when a company obtains workers' compensation coverage. Though Texas encourages employers to elect coverage under the Act, most Texas employers are not required to provide coverage. Tex. Lab. C. § 406.002; *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 241-43 (5th Cir. 2015) (citing *Wingfoot Enterprises v. Alvarado,* 111 S.W.3d 134, 142 (Tex. 2003)). Those who carry workers' compensation coverage are called "subscribers," and those who do not are called "non-subscribers." *See generally, Tex. Mexican Ry. Co. v. Bouchet*, 963 S.W.2d 52 (Tex. 1998).

Section 451 of the Act forbids retaliation against employees for filing a workers' compensation claim. It provides, in relevant part:

> A person may not discharge or in any other manner discriminate against an employee because the employee has … filed a workers' compensation claim in good faith ….

Tex. Lab. C. § 405.001(1). The Texas Supreme Court determined in *Bouchet* that the Act's anti-retaliation provision does not apply to non-subscribers. 963 S.W.2d at 56. The court concluded that the word "person" in Section 451 means "subscriber"

7

because the anti-retaliation provision was intended to protect individuals who bring workers' compensation claims. And "there can be no doubt that only *employees of subscribers to the Act* can bring workers' compensation claims … [and, thus] *only subscribers can be subject to [Section 451] claims*."[2] *Id.* (emphasis added).

Workers cannot bring Section 451 claims against workers' compensation non-subscribers,[3] and according to the Fifth Circuit in *Burton v. Freescale Semiconductor, Inc.*, that conclusion is the same if a company is a non-subscriber *as to all workers* (as in *Bouchet*) or if the company is a non-subscriber *as to the plaintiff* (as here and in *Burton*). 798 F.3d 222, 241-43 (5th Cir. 2015). Indeed, logic dictates that an entity without an interest in the workers' compensation claim has no incentive to retaliate against someone for filing a claim. "Forbidding retaliation against an employee for seeking monetary benefits under the [Act] presupposes that the employer provides the employee's workers' compensation benefits and therefore has some stake in the claim." *Id.* at 241 (citing *Bouchet,* 963 S.W.2d at 56 and *City of LaPorte v. Barfield*, 898 S.W.2d 288, 293 (Tex. 1995)).

*Burton*'s analysis of Texas Supreme Court precedent is compelling. There, a staffing company, Manpower, employed plaintiff and temporarily assigned her to

---

[2] 963 S.W.2d at 56-57. *Bouchet* analyzed the language of Tex. Rev. Civ. Stat. art. 8307c, which was later re-codified as Section 451. The court found that the same result would be reached under Section 451.

[3] *See also Nanez v. Swift Transportation Corp.,* No. EP-07-CV-361-PRM, 2009 WL 10700191, at *3 (W.D. Tex. June 5, 2009) (dismissing plaintiff's Section 451 claim against non-subscriber).

Freescale. *Id.* at 225. Like Aerotek, Ramirez, and Schneider Electric here, Manpower provided workers' compensation coverage to plaintiff and other temporary workers, and Freescale provided such coverage to its permanent employees. *Id.* at 242. Following a workplace injury, plaintiff filed a workers' compensation claim with Manpower; her assignment to Freescale ended soon after. *Id.* at 225-26. Plaintiff brought a Section 451 claim against Freescale, even though Manpower provided her workers' compensation coverage. The Fifth Circuit held that plaintiff *could not* maintain a Section 451 claim against Freescale for several reasons.[4] *Id.* at 243.

First, the Fifth Circuit noted that the Texas Supreme Court has been unequivocal that non-subscribers are not subject to Section 451 retaliation claims. *Id.* at 242 (citing *Bouchet*, 963 S.W.2d at 56 and *City of LaPorte*, 898 S.W.2d at 293). Second, it found that Freescale's provision of workers' compensation coverage to its permanent employees was insufficient to impose liability as to plaintiff, finding instead that it must provide coverage *to the plaintiff* to be liable under Section 451. *Burton*, 798 F.3d at 242. It did so by relying on rationale from *Garza v. Exel*

---

[4] In analyzing the plaintiff's Section 451 claim in *Burton*, the Fifth Circuit *assumed* that Manpower and Freescale were "co-employers" under the Act, in part because earlier in the opinion, the Court had found that the entities were "joint employers" under the Americans with Disabilities Act. *Id.* at 242, n. 21. However, the Fifth Circuit also determined that the co-employer relationship was irrelevant to the Section 451 claim: "*since Freescale is not the 'subscriber' responsible for Burton's workers' compensation coverage,* the question of employment is beside the point." *Id.* (citing *Bouchet*, 963 S.W.2d at 56) (emphasis added).

*Logistics, Inc.*, 161 S.W.3d 473, 476 (Tex. 2005) and its discussion of the term "employer" in a separate section of the Act.[5] *Garza* explained that, under the Act, it is not enough for a company to be an "employer" generally, but that it must have an employer-employee *relationship* with the plaintiff. *Id.* at *Burton*, 798 F.3d at 242. Relying on that same reasoning, the *Burton* court explained that it is not enough for a defendant to be a subscriber *generally* but that it is the subscriber *relationship* with the plaintiff that is controlling. *Burton*, 798 F.3d at 242.

Finally, the Fifth Circuit found that treating a workers' compensation subscriber *less favorably* than a non-subscriber undermines the purpose and intent of the Act. *Id.* at 243 (citing *Wingfoot,* 111 S.W.3d at 142). There can be no dispute, for example, that if Schneider Electric did not subscribe to workers' compensation at all, Ramirez would have no Section 451 claim against it. *Bouchet*, 963 S.W.2d at 56. Therefore, imposing liability upon Schneider Electric *because* it provides workers' compensation to its permanent workforce would fly in the face of the Act's goal of encouraging coverage. *Burton*, 798 F.3d at 243 (citing *Wingfoot*, 111 S.W.3d at 142).[6] In the end, the Fifth Circuit determined that imposing liability on an entity

---

[5] *Garza* examines a different provision of the Act, Tex. Lab. C. § 408.001, known as the exclusive remedy provision, that—unlike Section 451—uses the terms "employer."

[6] "Under [plaintiff's] approach, despite having no stake in [plaintiff's] workers' compensation claim," [defendant] would be subject to liability because it made the unrelated and legislatively 'encourage[d]' decision to provide coverage for its permanent employees." *Burton*, 798 F.3d at 243 (citing *Wingfoot*, 111 S.W.3d at 142).

like Schneider Electric, was "purposeless and cuts against 'the Act's decided bias in favor of employers electing to provide coverage for their employees.'" *Id.*

Like *Burton*, this Court should find that an entity must provide workers' compensation coverage *to the plaintiff* to be liable to her under Section 451. Nothing in Section 451, nor any Supreme Court precedent interpreting the statute, suggests otherwise. Therefore, the trial court erred in denying Schneider Electric's Motion for Summary Judgment. The trial court's decision should be reversed, and judgment rendered in Schneider Electric's favor, dismissing Ramirez's Section 451 claim with prejudice.

## CONCLUSION AND PRAYER

Schneider Electric respectfully requests that the Court reverse the trial court's denial of Schneider Electric's Motion for Summary Judgment and render judgment for Schneider Electric, dismissing Ramirez's Section 451 claim against Schneider Electric with prejudice. Schneider Electric further requests any other relief to which it may be entitled.

## APPENDIX

| | |
|---|---|
| Tab 1: | Amended Order on Motions for Summary Judgment and Order Granting Schneider Electric's Motion for Permission to Appeal signed on August 10, 2021 |
| Tab 2: | Defendant Schneider Electric USA, Inc.'s Electric's Motion for Summary Judgment filed September 4, 2020 ("Schneider Electric's Summary Judgment Motion") |
| Tab 2A: | Excerpts of the February 28, 2020 Deposition of Maria Ramirez<br><br>(Ex. A to Schneider Electric's Summary Judgment Motion) |
| Tab 2B: | Declaration of Jason Volker, Director of Financial Operations for Aerotek, signed September 2, 2020<br><br>(Ex. B to Schneider Electric's Summary Judgment Motion) |
| Tab 2C: | Declaration of Ben Diaz, Human Resources Manager for Schneider Electric, signed August 25, 2020<br><br>(Ex. C to Schneider Electric's Summary Judgment Motion) |
| Tab 3: | Plaintiff's Response to Defendant Schneider Electric USA, Inc.'s Motion for Summary Judgment filed November 30, 2020 (excluding exhibits) |
| Tab 4: | Schneider Electric's Reply in Support of its Motion for Summary Judgment filed December 1, 2020 |

Dated: November 2, 2021        Respectfully submitted,


*/s/ Andrew M. Gould*
Andrew M. Gould
Texas State Bar No. 00792541
*andrew.gould@wickphillips.com*
Molly M. Jones
Texas State Bar No. 24100271
*molly.jones@wickphillips.com*
Dana M. Hilzendager
Texas State Bar No. 24106099
*dana.hilzendager@wickphillips.com*

**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: 214.692.6200
Facsimile: 214.692.6255

and

Noemi Lopez
Texas State Bar No. 24078881
*nlopez@raylaw.com*

**RAY, PEÑA, MCCHRISTIAN, PC**
5822 Cromo Drive
El Paso, Texas 79912
Telephone: 915.832.7243
Facsimile: 915.832.7333

**ATTORNEY FOR APPELLANT
SCHNEIDER ELECTRIC USA, INC.
d/b/a SCHNEIDER ELECTRIC**

14

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2021 a true and correct copy of this brief, including any and all attachments, was served via electronic service through eFile.TXCourts.gov on all parties through counsel of record, listed below:

Enrique Chavez, Jr.
enriquechavezjr@chavezlawpc.com
Michael R. Anderson
manderson@chavezlawpc.com
Christine A. Chavez
cachavez@chavezlawpc.com
**CHAVEZ LAW FIRM**
2101 Stanton Street
El Paso, Texas 79902
Telephone: 915.351.7772
Facsimile: 915.351.7773

**ATTORNEYS FOR APPELLEE MARIA RAMIREZ**

Christine E. Reinhard
creinhard@sr-llp.com
Dylan A. Farmer
dfarmer@sr-llp.com
**SCHMOYER REINHARD LLP**
8000 IH 10 West, Suite 1600
San Antonio, Texas 78230
Telephone: 210.447.8033
Facsimile: 210.447.8036

**ATTORNEYS FOR DEFENDANT (TRIAL COURT) AEROTEK, INC.**

/s/Andrew M. Gould
Andrew M. Gould

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing response is in compliance with Texas Rule of Appellate Procedure 9.4(i)(B) because it contains 1,880 words and has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font for text and 12-point Times New Roman for footnotes, which meets the typeface requirements.

*/s/Andrew M. Gould*
Andrew M. Gould

# Tab 1:

El Paso County - 327th District Court

Filed 8/12/2021 10:07 AM
Norma Favela Barceleau
District Clerk
El Paso County
2019DCV3145

**IN THE 327TH DISTRICT COURT
EL PASO COUNTY, TEXAS**

| | | |
|---|---|---|
| MARIA RAMIREZ, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Cause No. 2019DCV3145 |
| | § | |
| AEROTEK, INC. and SCHNEIDER | § | |
| ELECTRIC USA, INC. d/b/a | § | |
| SCHNEIDER ELECTRIC, | § | |
| | § | |
| Defendants. | § | |

## AMENDED ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND ORDER GRANTING SCHNEIDER ELECTRIC'S MOTION FOR PERMISSION TO APPEAL

### A. ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGEMENT

On December 1, 2020, the Court heard arguments on Defendant Schneider Electric USA, Inc.'s Motion for Summary Judgment ("Schneider Electric's Motion"). On April 8, 2021, the Court heard arguments on Defendant Aerotek, Inc.'s Traditional & No Evidence Motion for Summary Judgment ("Aerotek's Motion"). After considering the motions, Plaintiff's responses, the evidence submitted by the parties, the arguments of counsel, and the relevant case law, the Court is of the opinion that (1) Schneider Electric's Motion should be DENIED, and (2) Aerotek's Motion should be GRANTED in its entirety.

It is, therefore, ORDERED, ADJUDGED, and DECREED as follows:

1. Schneider Electric's Motion is DENIED, and it can be liable to Plaintiff under Tex. Lab. C. § 451.001 ("Chapter 451").

2. Aerotek's Motion is GRANTED and Plaintiff's claim for workers' compensation retaliation under Chapter 451 – the only claim pending against Aerotek before this

Order – Page 1

Court – is hereby fully and finally DISMISSED from this lawsuit WITH PREJUDICE.

3. Aerotek is awarded and may recover its taxable costs of court as allowed by law.

This judgment for Aerotek does not affect Plaintiff's claim and causes of action against Schneider Electric, which remain pending before the Court under this cause number.

## B. ORDER ON SCHNEIDER ELECTRIC'S MOTION FOR PERMISSION TO APPEAL ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND FOR AMENDMENT OF ORDER

On August 4, 2021, the Court considered Defendant Schneider Electric's Motion for Permission to Appeal Order Denying Motion for Summary Judgment (the "MSJ Order") and for Amendment of Order (the "Permissive Appeal Motion"). After considering the Permissive Appeal Motion, Plaintiff's Response, the arguments of counsel, as well as the evidence before the Court, the Court hereby GRANTS the Permissive Appeal Motion pursuant to Texas Civil Practice & Remedies Code Section 51.014(d)(2) and Texas Rule Civil Procedure 168 and amends the MSJ Order denying Schneider Electric's Motion as follows:

The Court finds that the MSJ Order denying Schneider Electric's Motion involves a controlling question of law as to which there is a substantial ground for difference of opinion: whether Schneider Electric can be liable to Plaintiff for workers' compensation discrimination pursuant to Chapter 451 since Schneider Electric did not provide Plaintiff workers' compensation coverage but does provide workers' compensation coverage to its direct employees. Since Plaintiff's claim against Aerotek was dismissed with prejudice, determination of this issue governs the viability of Plaintiff's sole remaining claim. Resolution of this issue is difficult given the absence of guiding precedent available to allow this Court and other trial courts to effectively and efficiently determine this issue. Immediate appeal from this Court's MSJ Order will materially advance the ultimate termination of the litigation, since determination

Order – Page 2

of this issue would be dispositive of Plaintiff's claim and this case. The Parties and the judicial system may avoid a full trial on the merits and an appeal based on the propriety of this order. *See* Tex. Civ. Prac. & Rem. Code § 51.014(d)(2); Tex. R. Civ. P. 168.

Signed this ___10___ day of ___August___, 2021.

_____
HON. LINDA Y. CHEW

Order – Page 3

1037

**AGREED:**

/s/Dylan A. Farmer
Christine E. Reinhard
Texas State Bar No. 24013389
creinhard@sr-llp.com
Dylan A. Farmer
Texas State Bar No. 24093417
dfarmer@sr-llp.com

**SCHMOYER REINHARD LLP**
8000 IH 10 West, Suite 1600
San Antonio, Texas 78230
Telephone: 210.447.8033
Facsimile: 210.447.8036

**ATTORNEYS FOR DEFENDANT
AEROTEK, INC.**

/s/Andrew M. Gould
Andrew M. Gould
Texas State Bar No. 00792541
andrew.gould@wickphillips.com
Molly M. Jones
Texas State Bar No. 24100271
molly.jones@wickphillips.com
Dana M. Hilzendager
Texas State Bar No. 24106099
dana.hilzendager@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN,
LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: 214.692.6200
Facsimile: 214.692.6255

**ATTORNEYS FOR SCHNEIDER
ELECTRIC USA, INC.**

Order – Page 4

1038

# Tab 2:

El Paso County - 327th District Court

Filed 9/4/2020 1:57 PM
Norma Favela Barceleau
District Clerk
El Paso County
2019DCV3145

IN THE 327TH DISTRICT COURT
EL PASO COUNTY, TEXAS

| | | |
|---|---|---|
| MARIA RAMIREZ, | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | **Cause No. 2019DCV3145** |
| | § | |
| AEROTEK, INC. and SCHNEIDER | § | |
| ELECTRIC USA, INC. d/b/a | § | |
| SCHNEIDER ELECTRIC, | § | |
| | § | |
| **Defendants.** | § | |

### DEFENDANT SCHNEIDER ELECTRIC USA, INC.'S
### MOTION FOR SUMMARY JUDGMENT

Defendant Schneider Electric USA, Inc. d/b/a Schneider Electric ("Schneider Electric") files this Motion for Traditional Summary Judgment (the "Motion") under Tex. R. Civ. P. 166a(b) and (i) and Local Rule 3.13 seeking dismissal of Plaintiff Maria Ramirez's ("Plaintiff's" or "Ramirez's") lone claim against Schneider Electric for workers' compensation discrimination claim pursuant to Tex. Lab. C. § 451.001 ("Section 451").

### I.
### INTRODUCTION AND GROUND FOR SUMMARY JUDGMENT

Plaintiff Maria Ramirez was employed by Defendant Aerotek, Inc. ("Aerotek"), a staffing company, and was assigned to provide temporary services to Schneider Electric. Her assignment ended in April 2018. She now claims it was because she pursued workers' compensation benefits. Because Aerotek, not Schneider Electric, provided such benefits, Plaintiff's claim against Schneider Electric fails as a matter of law.

## II.
## SUMMARY JUDGMENT EVIDENCE

Schneider Electric's summary judgment evidence, which is attached to this Motion and incorporated herein by reference as if fully set forth herein, is set forth as follows:[1]

**Exhibit A** – Excerpts of the Feb. 28, 2020 Deposition of Maria Ramirez ("Pl. Dep.")

**Exhibit B** – Declaration of Jason Volker ("Volker Decl.")

**Exhibit C** – Declaration of Ben Diaz ("Diaz Decl.")

## III.
## STATEMENT OF UNDISPUTED FACTS

**A.     Aerotek, Not Schneider Electric, Provides Workers' Compensation Insurance To Its Personnel.**

1.     Schneider Electric maintains a manufacturing facility in El Paso, Texas. Exh. C, Diaz Decl. ¶ 2. To supplement its direct workforce, Schneider Electric contracts with staffing companies, including Aerotek, a global staffing company to supply it with temporary personnel. *Id.* at ¶ 3.

2.     The workers provided by Aerotek are employed by it—not by Schneider Electric—and Aerotek provides its employees with workers' compensation coverage. Exh. B, Volker Decl. ¶ 3. Further, Aerotek's workers' compensation policy that applies to individuals working on assignment at the Schneider Electric El Paso facility does not name Schneider Electric as an insured. *Id.*

3.     Schneider Electric provides workers' compensation coverage to its own direct employees, and its coverage does not apply to temporary personnel working on assignment at its facility employed by Aerotek. Exh. C, Diaz Decl. ¶ 3.

---

[1]     Schneider Electric respectfully requests the Court take judicial notice of all pleadings and documents that have been filed with the Court so that those documents do not need to be attached to this Motion.

4. In April 2018, Plaintiff sought workers' compensation benefits through her employer, Aerotek. Exh. A, Pl. Dep. 69-70 and Pl. Dep. Ex. 3; *id.* at 174-75 and Pl. Dep. Ex. 12; Exh. B, Volker Decl. ¶ 4.

5. Plaintiff's assignment at Schneider Electric ended as a result of her committing a safety infraction. Exh. C, Diaz Decl. ¶ 4.

**B. Ramirez Files Suit Against Schneider Electric and Aerotek**

6. On August 21, 2019, Ramirez filed suit in this court against Schneider Electric and Aerotek, claiming sex discrimination, sexual harassment and retaliation, disability discrimination and retaliation, and workers' compensation retaliation. *See* Plaintiff's Original Petition and Request for Disclosure. Schneider Electric removed the case to federal court, where the Section 451 claim was severed and remanded to this Court. The remaining claims are proceeding against Aerotek and Schneider Electric in federal court.

**IV.**
**ARGUMENT AND CITATION TO AUTHORITY**

**A. Summary Judgement Standard**

Summary Judgement is proper where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A defendant is entitled to summary judgment if it "conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense." *Armendariz v. Redcats USA, L.P.*, 390 S.W.3d 463, 467 (Tex. App.—El Paso 2012, no pet.) (citing *Frost Nat. Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010)). A no-evidence summary judgment motion must be granted where there has been adequate time for discovery and there is no evidence to establish one or more essential element of the claim. Tex. R. Civ. P. 166a(i).

**B. Schneider Electric Was Never Plaintiff's Workers' Compensation Insurance Provider And, Consequently, Her Claim Fails As A Matter of Law**

The threshold question for Plaintiff's Section 451 claim is whether she has evidence that Schneider Electric is even subject to Section 451 as to her. As explained below, she does not have such evidence, and in fact, Schneider Electric cannot be liable to her as a matter of law.

Section 451.001 forbids retaliation against employees for filing a workers' compensation claim. According to the Texas Supreme Court, the anti-retaliation provisions of the Texas Workers' Compensation Act (the "Act") "is intended to apply only to employees and employers *who act under the ... Act.*" *Tex. Mexican Ry. Co. v. Bouchet*, 963 S.W.2d 52, 56 (Tex. 1998) (emphasis added). "Forbidding retaliation against an employee for seeking monetary benefits under the [Act] presupposes that the employer is a subscriber."[2] *Id.* (citing *City of LaPorte v. Barfield*, 898 S.W.2d 288, 293 (Tex. 1995)). Indeed, as the Supreme Court stated, "there can be no doubt that only *employees of subscribers to the Act* can bring workers' compensation claims … [and] only subscribers can be subject to [Section 451] claims." *Bouchet*, 963 S.W.2d at 56 (emphasis added).[3]

*Bouchet* makes clear that workers cannot bring Section 451 claims against workers' compensation non-subscribers. *Id.*[4] According to the Fifth Circuit in *Burton v. Freescale Semiconductor, Inc.*, the conclusion is the same if a company is a non-subscriber *as to all workers* (as in *Bouchet*) or if the company is a non-subscriber *as to the plaintiff* (as here). 798 F.3d 222, 241-43 (5th Cir. 2015).

---

[2] Not all employers in Texas are required to subscribe to workers' compensation as set forth in the Act. Tex. Lab. C. § 406.002. Those who do are called "subscribers," and those who do not are called "non-subscribers."

[3] *Bouchet* analyzed the language of Tex. Rev. Civ. Stat. art. 8307c, which was later re-codified as Section 451.001, but the court found that the same result would be reached under Section 451. 963 S.W.2d at 56.

[4] *See also Nanez v. Swift Transportation Corp.*, No. EP-07-CV-361-PRM, 2009 WL 10700191, at *3 (W.D. Tex. June 5, 2009) (dismissing plaintiff's Section 451 claim against a non-subscriber).

*Burton* is compelling. There, a Manpower temporary employee on assignment at Freescale brought a Section 451 claim against Freescale, even though Manpower provider her workers' compensation coverage—an identical factual situation as here. In *Burton*, the Fifth Circuit relied on Texas Supreme Court precedent to find that plaintiff *could not* maintain a Section 451 claim against Freescale. *Id.* at 243. It reasoned, first, that the Texas Supreme Court has been unequivocal that non-subscriber entities are not subject to Section 451 retaliation claims. *Id.* at 242 (citing *Bouchet*, 963 S.W.2d at 56 and *City of LaPorte*, 898 S.W.2d at 293). Then, relying on *Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 476 (Tex. 2005), it found that it is insufficient for an entity to be a subscriber generally to be subject to Section 451; it must be a subscriber as to the employee at issue. *Burton*, 798 F.3d at 242.

Finally, the *Burton* court explained that treating a workers' compensation subscriber *less favorably* than a non-subscriber undermines the purpose and intent of the Act. *Id.* at 243 (citing *Wingfoot Enterprises v. Alvarado*, 111 S.W.3d 134 (Tex. 2003)). There can be no dispute, for example, that if Schneider Electric did not subscribe to workers' compensation at all, Ramirez would have no Section 451 claim against it. *See Bouchet*, 963 S.W.2d at 56. The Act's purpose is to encourage entities to provide workers' compensation coverage. Therefore, it would fly in the face of the statutory scheme to find that a subscriber as to its direct personnel, like Schneider Electric, who "despite having no stake in [Ramirez's] workers' compensation claim," can be subject to Section 451 claims, while a non-subscriber cannot. *Id.* at 243. That conclusion, according to the Fifth Circuit, would defy the Texas Supreme Court decisions in *Bouchet*, *Wingfoot*, and *Garza*. *Id.*

# V.
# CONCLUSION

Schneider Electric did not provide workers' compensation benefits to Plaintiff, so her claim for workers' compensation retaliation under Section 451 against it fails as a matter of law.

For the reasons set forth herein, Schneider Electric respectfully requests that this Court enter summary judgment in its favor dismissing Ramirez's claim against Schneider Electric and award it all other remedies to which it may be entitled.

Dated: September 4, 2020

Respectfully submitted,

*/s/Andrew M. Gould*
Andrew M. Gould
Texas State Bar No. 00792541
*andrew.gould@wickphillips.com*
Molly M. Jones
Texas State Bar No. 24100271
*molly.jones@wickphillips.com*
Dana M. Hilzendager
Texas State Bar No. 24106099
*dana.hilzendager@wickphillips.com*

**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: 214.692.6200
Facsimile: 214.692.6255

**ATTORNEYS FOR SCHNEIDER
ELECTRIC USA, INC.**

## CERTIFICATE OF SERVICE

Pursuant to the Texas Rules of Civil Procedure, the undersigned attorney of record certifies that a copy of the foregoing instrument was served upon all counsel of record via the court's electronic filing system on September 4, 2020.


/s/Andrew M. Gould
Andrew M. Gould

# Tab 2A:

# EXHIBIT A

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

MARIA RAMIREZ,                    )
                                  )
                                  )
                PLAINTIFF,        )
                                  )
VS.                               ) CIVIL ACTION
                                  )
                                  ) NO. 3:19-cv-283
AEROTEK, INC., and                )
SCHNEIDER ELECTRIC USA,           )
INC., d/b/a SCHNEIDER             )
ELECTRIC,                         )
                                  )
                DEFENDANTS.       )

--------------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF

MARIA RAMIREZ

FEBRUARY 28, 2020

--------------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF MARIA RAMIREZ, produced as a witness at the instance of DEFENDANT AEROTEK, and duly sworn, was taken in the above-styled and numbered cause on the 28th of February, 2020, from 9:41 a.m. to 5:39 p.m., at the offices of ACR Ink, LLC, 221 N. Kansas, Suite 505, pursuant to the Federal Rules of Civil Procedure.

Reported By:

Melody C. Joiner, CSR

A P P E A R A N C E S

FOR THE PLAINTIFF:

    Mr. Michael Anderson
    CHAVEZ LAW FIRM
    2101 N. Stanton Street
    El Paso, Texas 79902

FOR DEFENDANT AEROTEK:

    Ms. Christine E. Reinhard
    SCHMOYER REINHARD, LLP
    17806 IH 10 West, Suite 400
    San Antonio Texas 78257

FOR DEFENDANT SCHNEIDER ELECTRIC:

    Ms. Molly M. Jones
    Mr. Andrew Gould
    WICK PHILLIPS GOULD & MARTIN, LLP
    3131 McKinney Ave., Suite 100
    Dallas Texas 75204

ALSO PRESENT:

    Mr. Ben Diaz
    Mr. Roger Navarro, Video Technician

Page 67

know, just in general conversation.

Q. Did this -- did you sign this document on the same day you had the interview?

A. Yes.

Q. Did you sign it immediately after you could go from the interview and into --

A. Yeah, because it was like, I need you yesterday. That's how bad they needed people. And it was like, As soon as you leave here, go -- I don't know if it was the same day or the next day -- Go sign paperwork, I need -- they need to run a criminal background, blah, blah, blah, urine, dah, dah, dah, dah, dah.

Q. So it was close in time, is the point?

A. Yes.

Q. Before you started working on assignment at Schneider, other than Mr. Antuna, did you discuss the three-month probationary period with anyone?

A. Yes. Like I said, just in general conversation with other employees. You know, it's like, So how long did you have to stay with the temporary service in order to get hired on? Some people would say three months. Some people would say four months. Some people would say a year. Some people would say, I have never gotten hired with Schneider. And then some people would say,

Page 68

Oh, yeah, I got hired right away.

So it was -- it was just a general conversation with just --

Q. So it sounds like the feedback you got from other employees is that it varied?

A. It varied --

Q. It wasn't this three-month --

A. -- yeah, exactly. It was -- it was -- it varied. There was employees there that had been employed with Schneider for over -- with Aerotek with over like two years. And I'm like, Seriously? It's like, Yeah. And so it was --

Q. Do you remember --

A. It was information I needed to know.

Q. Is that before you started working on assignment or during your assignment at Schneider?

A. Oh, no. That was in my assignment.

Q. Do you remember the names of any of those individuals you discussed this hiring issue with?

A. No, ma'am. I just -- it's just in general conversation that you have with employees when you're interested in a position.

Q. Other than Mr. Antuna, did you have a conversation with any Schneider Electric managers or supervisors about this three-month probationary period?

Page 69

A. No, ma'am.

Q. Have you told me every conversation you can recall about the three-month probationary period you contend Mr. Antuna discussed with you?

A. I don't understand the question.

Q. Have you told me about every conversation you can recall about that three-month probationary period?

A. That was it. That -- Mr. Antuna was the one that extended the three-month probationary period.

Q. But you weren't employed by Schneider Electric, correct?

MR. ANDERSON: Objection, calls for legal conclusion.

Q. (BY MS. JONES) You can answer. You can answer.

A. I was with Aerotek. I went in through Aerotek.

(Exhibit 3 marked.)

Q. (BY MS. JONES) Handing you what's been marked Exhibit 3. Do you recognize this document?

A. Yes.

Q. Did you sign it with your electric sig- -- electronic signature on October 27th, 2017?

A. Yes.

Q. And did you read it before you signed it?

A. I probably didn't. I just went through the

Page 70

paperwork as it was being -- it's like, Sign this, sign that; you need to sign this. I know that I was signing something on workmen's comp.

Q. And I think we discover -- discussed this before, but you understood that Aerotek was going to be providing you workers' comp coverage; is that right?

A. That's what they told me when I got hurt at Schneider.

Q. Did you have an understanding about workers' comp coverage when you started your employment at Aerotek?

A. No.

Q. Did anyone ever tell you that Schneider Electric would be providing you with workers' compensation coverage?

A. Nobody ever told me about workmen's comp because I've never used it.

Q. Never used it until the Schneider Electric --

A. Correct.

Q. -- Aerotek incident?

A. I've never used this. I've always -- if I -- if I need insurance, I went to the doctor with my health insurance.

Q. But this document is notifying you that Aerotek is providing you with workers' compensation coverage, is

Page 171

Mr. -- Dr. Garcia?

A. Yes. Yes, ma'am, because she referred me to him.

Q. And in number 13, do you see which box is checked? Will allow employee to return to work with restrictions identified in Part III, do you see that?

A. Yes, ma'am.

Q. So you told me a second ago that you were kept off of work, but this appears to allow you to work with the restrictions in Part III, doesn't it?

A. Correct. But she didn't let me come back to work.

Q. Who didn't let you come back to work?

A. Ms. Flores. She told me, Just go home and rest your arm. And go see the other doctor, Dr. Klein. Because they had referred me to Dr. Klein. So goes, Don't come back to work till I call you and let you know when you can return to work. And I said, Okay.

Q. Did you want to come back to work?

A. Yes, ma'am, I did.

Q. Did you ask to come back to work?

A. Yes, ma'am.

Q. On Ap- -- April 9th, 2018 --

A. Yeah.

Q. -- you asked to come back to work?

Page 172

A. Because I thought I was going to come back and do some light duty.

Q. You weren't scheduled to work on April 9th, were you?

A. I don't know what day that falls under.

Q. If I told you that --

A. Monday.

Q. -- the 9th was a Monday, you're not scheduled to work --

A. No.

Q. -- on Monday, correct?

Did you talk to Ms. Flores after this appointment --

A. Yes.

Q. -- on April 9th?

A. Yes.

Q. What did -- did you talk to her on the phone or in person?

A. In person, because I needed to turn in paperwork.

Q. So let me make sure I got this right. You go to Schneider Electric to see Ms. Flores, and then you go to the doctor, and then you go back to Schneider Electric to see Ms. Flores?

A. Yes, to turn in paperwork.

Page 173

Q. To turn in paperwork. So that's correct, what I just relayed?

A. (Moving head up and down).

Q. When you see her the first time, how long were you there talking to her?

A. I don't remember how long we were there. I just needed to report the incident, and she told me the doctor I needed to go see, and according to whatever the doctor said, to come back and give the excuse if I was going to be able to come back to work.

Q. Was that a long meeting?

A. No.

Q. Did you discuss harassment at that meeting?

A. I didn't discuss anything with her. She just sent me to get my arm checked. It was, like, bad.

Q. And then when you came back, did you go directly from the doctor's office back to Schneider Electric?

A. Uh-huh.

Q. And how long was that meeting?

A. I don't know. Probably an hour.

Q. And what did -- what happened in that meeting?

A. I just told her that I needed to come back to work with restrictions. And she said that she couldn't allow me to come back to work with restrictions because

Page 174

there was nothing for me to do. Just to go back home until she called me back.

Q. Why did you tell her on Monday that you needed to come back with restrictions when you would have three more days before you'd even be scheduled to go back?

A. It was the paperwork I needed to turn in.

Q. I understand to turn in the paperwork. But why did you tell her on Monday, I need to come back to work with restrictions, when you have until Friday when you're even scheduled? You don't know how you're going to be feeling. You don't know how the day is going to progress.

A. I was just following orders and -- I'm just following my doctor's orders. When I got out of doctor's, I went back to her office and I gave her her paperwork.

Q. You gave her the -- the form that we're -- marked as Exhibit 11?

A. Yes.

(Exhibit 12 marked.)

Q. (BY MS. JONES) Handing you what I've marked as Exhibit 12. Does this document look familiar?

A. Yes.

Q. Did you complete this document?

A. Yes.

Page 175

Q. Is this your handwriting?

A. Yes.

Q. That's your signature at the bottom?

A. Yes, ma'am.

Q. You filled this -- all the information out in here, right?

A. Yeah, it looks like my writing, my awful writing.

Q. Did you fill this out before or after your doctor's appointment with --

A. Incident Information. Date, injury, 4/7.

Q. So we just looked at a form in Exhibit 11 from when you went to the doctor.

A. Okay.

Q. And that was on April 9th?

A. Yes.

Q. And this form is also dated April 9th?

A. Yes.

Q. So the question is, did you fill out this form, Exhibit 12, after you went to the doctor, as exhibited -- as shown in Exhibit 11?

A. I don't know when I filled this out, because it's -- it says one date on the 7th, and then one date on the 9th.

Q. It says, Date injury occurred, 4/7/2018.

Page 176

A. Okay.

Q. Do you see that?

A. Yes.

Q. And then date -- I take that to be date of the form -- that you completed the form on the 9th?

A. Okay.

Q. Does that seem like it makes sense to you?

A. Yes, ma'am.

Q. And if you look at the bottom part, right above your signature, it says, No work till release from Dr. Klein.

Do you see that?

A. Yes, ma'am.

Q. Did you write that?

A. Yeah. Because that's -- I think that's what they told me to do.

Q. What who told you to do?

A. I couldn't come back to work because I needed to be released from the doctor.

Q. But you were released from the doctor in Exhibit 11, correct?

A. But this is not the same doctor. This is another doctor.

Q. I understand. This doctor is telling you you're able to work with restrictions. Didn't he tell

Page 177

you that --

A. Yes.

Q. -- in Exhibit 11?

And you said you told Esther that you want to come back to work, right?

A. Yes, I didn't mind coming back to work.

Q. So why did you write, No work till release from Dr. Klein?

A. Because that's what they told me to put.

Q. Who's "they"?

A. If I'm -- if I'm restricted to come from work till I got released from Dr. Klein. And Dr. Klein -- I was barely going to go see Dr. Klein. It's -- this is like before -- this is -- this is just like a doctor they send you to see if you're okay. And once the doctor says you're not okay, then this doctor refers you to this doctor. And she told me, Don't come back to work until Dr. Klein releases you.

Q. Are you saying Esther Flores told you to write that?

A. Yes. That's -- that's what that is.

Q. And you didn't write on here, I want -- that you wanted to come back to work with light duty?

A. She told me I couldn't come back to work.

Q. If you look up in the middle of the form, it

Page 178

says, Have you had the same or similar injury before? And you say, No, perfect bill of health. Is that right?

A. Yes.

Q. Is that accurate?

A. Yes.

Q. And it asks you who you reported the incident to, and you said Jesus Estrada, Cesar Hernandez and Raphael. Who's Rafael?

A. The nurse.

Q. Who does Rafael work for?

A. Schneider.

Q. When did you see Rafael -- or when did you communicate with Rafael?

A. On the day I reported this incident. I think it was on the 8th.

Q. What did you say to Rafael?

A. The same thing, that I got hurt on the job and I needed to report it.

Q. What did Rafael tell you?

A. He told me to see Esther. And Esther sent me to the doctor.

Q. But Esther wasn't there on the 8th, right?

A. No, I don't think she was. No.

Q. Did you talk to Cesar Hernandez on the 8th?

A. That's the guy that I told her I reported this

C E R T I F I C A T E

STATE OF TEXAS )

COUNTY OF EL PASO )

I, Melody C. Joiner, Certified Shorthand Reporter in and for the State of Texas, hereby certify that this transcript is a true record of the testimony given in said proceedings, and that said transcription is done to the best of my ability.

Given under my hand and seal of office on this 16th day of March, 2019.

Melody C. Joiner
Certified Shorthand Reporter
  Of the State of Texas
Certification number 5525
Date of expiration of
  certification: 10/31/22
Firm Registration # 11613


## Aerotek

### Notice 6: NOTICE TO EMPLOYEES CONCERNING WORKERS' COMPENSATION IN TEXAS [Texas Workers' Compensation Rule 110.101(e)(1)]

**COVERAGE:** Aerotek, Inc has workers' compensation insurance coverage from ESIS/Indemnity Insurance Company of North America in the event of work-related injury or occupational disease. This coverage is effective from 11/30/15. Any injuries or occupational diseases which occur on or after that date will be handled by ESIS/Indemnity Insurance Company of North America. An employee or a person acting on the employee's behalf, must notify the employer of an injury or occupational disease not later than the 30th day after the date on which the injury occurs or the date the employee knew or should have known of an occupational disease, unless the Texas Department of Insurance, Division of Workers' Compensation (Division) determines that good cause existed for failure to provide timely notice. Your employer is required to provide you with coverage information, in writing, when you are hired or whenever the employer becomes, or ceases to be, covered by workers' compensation insurance.

**EMPLOYEE ASSISTANCE:** The Division provides free information about how to file a workers' compensation claim. Division staff will answer any questions you may have about workers' compensation and process any requests for dispute resolution of a claim. You can obtain this assistance by contacting your local Division field office or by calling 1-800-252-7031. The Office of Injured Employee Counsel (OIEC) also provides free assistance to injured employees and will explain your rights and responsibilities under the Workers' Compensation Act. You can obtain OIEC's assistance by contacting an OIEC customer service representative in your local Division field office or by calling 1-866-EZE-OIEC (1-866-393-6432).

**SAFETY VIOLATIONS HOTLINE:** The Division has a 24 hour toll-free telephone number for reporting unsafe conditions in the workplace that may violate occupational health and safety laws. Employers are prohibited by law from suspending, terminating, or discriminating against any employee because he or she in good faith reports an alleged occupational health or safety violation. Contact the Division at 1-800-452-9595.

**NOTICE TO NEW EMPLOYEES** "You may elect to retain your common law right of action if, no later than five days after you begin employment or within five days after receiving written notice from the employer that the employer has obtained workers' compensation insurance coverage, you notify your employer in writing that you wish to retain your common law right to recover damages for personal injury. If you elect to retain your common law right of action, you cannot obtain workers' compensation income or medical benefits if you are injured." Please sign below to confirm that you have been notified and understand the contents of this notification.

Maria L Ramirez (Electronic Signature)
**Employee's Signature**

Maria L Ramirez
**Employee's Name**

10/26/2017
**Date Signed**



EXHIBIT
3



**Aerotek** 7301 Parkway Drive Hanover, MD 21076 800-336-7091 Fax to: _____

# Employee Incident Report

Each employee is required to complete this form after experiencing an unintentional work related injury. This form is used as official documentation that an on-the job injury has occurred. Please be as specific as possible when completing. Please use the back of the paper if needed. PLEASE PRINT CLEARLY

## Employee Information:

| Employee Name: | Address: (No P.O. Box) Street: | Home Telephone Number: 915-801-3027 | Cell Telephone Number: Same |
|---|---|---|---|
| Maria L. Ramirez | City, State, Zip: | | |
| Social Security Number: | Job Title: Quality Tech II | Date of Birth: | Marital Status: Single |

*THE LAW PROVIDES FOR SEVERE PENALTIES IF YOU WITHHOLD A MATERIAL FACT OR MAKE A FALSE STATEMENT ON THIS OR ANY OTHER FORM TO OBTAIN WORKERS' COMPENSATION BENEFITS*

## Incident Information:

| Date Injury Occurred: 4-7-2018 | State Injury Occurred: Texas | Time of Day Injury Occurred: Afternoon | Client Name: Schneider Electric |
|---|---|---|---|
| Address: Where Injury Occurred: 1601 North Western | | Body Part(s) Injured: Neck, Shoulder, Back | Date Returned to Work: Open (Not Released) |

Incident Occurrence: El Paso 799

**How did the Injury occur?** *(Describe fully the events, which resulted in this injury or disease. Tell what happened and how it happened. Name any objects or substances involved and tell how they were involved. Give full details on all factors, which led or contributed to this claimed injury or disease)*

Was asked by lead & supervisor to torque 65 lbs over the period of 2 day of all units on floor.

**Were any safeguards provided? Used? If so, Please Explain:**

**What were you doing before the incident?**
Quality Tech II Inspector

**Have you ever had the same or similar injury before?** *If so, please provide type of injury, date of injury and type of medical treatment received.*
No perfect Bill of Health.

**Do you have any medical conditions that may impact your recovery?** *(Diabetes, high blood pressure, etc.)* No

| Did you report this incident to anyone at the Client? If so, to whom and when did you report it? YES- Jesus Estrada Cesar Hernandes - Rafael. | Did you notify anyone at Allegis Group, Inc. about the incident? If so, to whom and when did you notify? YES, Rafael called Aerotek (Esther) |
|---|---|

**Did anyone witness this incident?** If so, please list full name(s) and telephone number(s):

Name: _____ Telephone Number: _____

## Medical Information:

| Do/Did you require medical treatment? Y or N (If yes, please provide. Name the doctor, clinic, address and phone number of facility you will see/were seen. If no, please indicate reason for not seeking treatment.) YES - Dr. Carlos Garcia 655 E. Redd Rd. El Paso TX (915-222-8611) | Was a Drug Screen performed? Y or N If not, why? No Date and time of Next Doctor's Appointment? Call another Dr. Klein |
|---|---|

**Did the Doctor Report you could return to work?** Y or N
If yes, was it (circle one) FULL DUTIES OR RESTRICTED DUTIES No work till released from Dr. Klein
IF RESTRICTED, List your restriction:

I hereby certify that the above statements are true to the best of my knowledge or belief. I am aware that the law provides for severe penalties if I knowingly and/or with fraudulent intent withhold a material fact or make a false statement on this or any other form in order to obtain workers' compensation benefits. Additionally, I understand that Allegis Group requests that I keep them apprised of my medical/work status at all times. I further understand that Aerotek will try to offer transitional duty assignments to employees based on prescribed medical limitations resulting from job related injuries whenever possible. I agree to contact my Aerotek office to comply with this request.

Employee Signature: Maria L Ram     Employee Email: Mariacramirez21@ live.com     Date: 4-9-2018

Revised 5-2015

EXHIBIT 12

PENGAD 800-631-6989

Ramirez 000077

100

# Tab 2B:

# EXHIBIT B

**IN THE 327TH DISTRICT COURT
EL PASO COUNTY, TEXAS**

| | | |
|---|---|---|
| MARIA RAMIREZ, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Cause No. 2019DCV3145 |
| | § | |
| AEROTEK, INC. and SCHNEIDER | § | |
| ELECTRIC USA, INC. d/b/a | § | |
| SCHNEIDER ELECTRIC, | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF JASON VOLKER

     1.     My name is Jason Andrew Volker, and my address is 15 Silktree Court, Catonsville, MD 21228. I am over 18 years old, and I am competent to make this declaration. The facts in this declaration are based on my personal knowledge.

     2.     Aerotek, Inc. is a global staffing company, and it provides temporary contract workers to Schneider Electric at its manufacturing facility in El Paso, Texas. I am currently the Director of Financial Operations for Aerotek, and I have held that position since March 1, 2015.

     3.     Workers provided by Aerotek to Schneider Electric are employed by Aerotek, and Aerotek provides its employees with workers' compensation coverage. The workers' compensation policy that covers Aerotek's employees working on assignment at the Schneider Electric El Paso facility does not name Schneider Electric as an insured.

     4.     Maria Ramirez, an Aerotek employee, worked on assignment at Schneider Electric's El Paso facility for less than six months in 2017-2018. Ms. Ramirez made a workers' compensation claim under Aerotek's policy in 2018.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 2nd day of September, 2020.

*Jason A. Volker*

dotloop verified
09/02/20 10:04 AM EDT
FZ2I-4YO9-RCKR-PUGW

JASON ANDREW VOLKER

# Tab 2C:

# EXHIBIT C

## IN THE 327TH DISTRICT COURT
## EL PASO COUNTY, TEXAS

| | | |
|---|---|---|
| MARIA RAMIREZ, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Cause No. 2019DCV3145 |
| | § | |
| AEROTEK, INC. and SCHNEIDER | § | |
| ELECTRIC USA, INC. d/b/a | § | |
| SCHNEIDER ELECTRIC, | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF BEN DIAZ

1.      My name is Ben Diaz. I am over 18 years old, and I am competent to make this declaration. The facts in this declaration are true and correct and are based on my personal knowledge. I am making this declaration under the penalty of perjury.

2.      Schneider Electric maintains a manufacturing facility in El Paso, Texas. I am the Human Resources Manager at Schneider Electric's El Paso facility, a position I have held since February 2018.

3.      To supplement its direct workforce, Schneider Electric contracts with staffing companies, including Aerotek, a global staffing company, to supply it with temporary personnel. The workers provided by Aerotek are employed by it—not by Schneider Electric—and Aerotek provides its employees with workers' compensation coverage. Schneider Electric provides workers' compensation coverage to its own direct employees. Its coverage does not apply to temporary personnel working on assignment at its facility employed by Aerotek.

4.      Aerotek assigned Maria Ramirez to work at Schneider Electric's El Paso facility for a short period in 2017-2018. Her assignment at Schneider Electric ended as a result of her committing a safety infraction. Because she was an Aerotek employee, Schneider Electric never provided workers' compensation coverage to Ms. Ramirez.

My name is Ben David Diaz, my date of birth is January 26, 1981, and my business address is 1601 Northwestern Drive, El Paso, Texas, 79912, United States. I declare under penalty of perjury that the foregoing is true and correct.

Executed in El Paso County, State of Texas, on the __25th__ day of August, 2020.

_____
BEN DIAZ

104

# Tab 3:

El Paso County - 327th District Court

Filed 11/30/2020 3:11 PM
Norma Favela Barceleau
District Clerk
El Paso County
2019DCV3145

IN THE 327TH JUDICIAL DISTRICT COURT
EL PASO COUNTY, TEXAS

MARIA L. RAMIREZ,

      Plaintiff,

v.                                  Cause No. 2019-DCV-3145

AEROTEK, INC., and SCHNEIDER ELECTRIC USA, INC.
dba SCHNEIDER ELECTRIC,

      Defendants.

## PLAINTIFF'S RESPONSE TO DEFENDANT SCHNEIDER ELECTRIC USA, INC.'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE COURT:

Plaintiff Maria Ramirez ("Plaintiff" or "Employee Ramirez") now files this Response to "Defendant Schneider Electric USA, Inc.'s Motion For Summary Judgment" ("Motion") filed by Defendant Schneider Electric USA, Inc. d/b/a Schneider Electric ("Defendant" or "Employer Schneider"), and shows the Court as follows:

## I.      BOTTOMLINE AUTHORITY.

Under Texas' black letter law, specifically Texas Labor Code, Section 91.042(c), a staffing agency and its client company are "coemployers" when <u>either</u> the staffing agency or the client company has a workers' compensation insurance policy covering the staffing agency's employee leased to the client company, and **both the staffing agency and the client company are liable to the employee under Texas workers' compensation laws:**

> For workers' compensation insurance purposes, a license holder and the license holder's client shall be coemployers. If either a license holder or a client elects to obtain workers' compensation insurance coverage for covered employees, the client and the license holder are subject to Sections 406.005, 406.034, 408.001, and 411.032.

107

Texas Labor Code §91.042(c); Texas Labor Code §91.001(11) ("'License holder' means a person licensed under this chapter to provide professional employer services."); *Brown v. Aztec Rig Equipment, Inc.*, 921 S.W.2d 835 (Tex. App. - Houston [14th] 1996) (holding that for workers' compensation purposes, a staffing agency and its client company are co-employers, and the staffing agency's workers' compensation insurance policy covers the client company).

## II.    LEGAL STANDARD.

### A.   NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT.

In Texas, summary judgments are disfavored as a means of resolving cases. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989). Prior to a no-evidence motion for summary judgment being filed, there must be an "adequate time for discovery." Tex. R. Civ. P. 166a(i). This "adequate time for discovery" standard applies only to no-evidence motions for summary judgment. Tex. R. Civ. P. 166a(a)-(b), (i). Texas Rule of Civil Procedure 166a(i) provides that after adequate time for discovery, the movant, without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i).

In order to defeat a no-evidence motion for summary judgment, the non-movant must present *some* evidence raising a genuine issue of material fact supporting each element contested in the motion. Tex. R. Civ. P. 166a(i); *Mack Trucks, Inc. v. Tamaz*, 206 S.W.3d 572, 581-82 (Tex. 2006). In presenting its evidence, the nonmovant is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements. Tex. R. Civ. P. 166a cmt. −1997; *accord Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002). The nonmovant raises a genuine issue of material fact by producing "more than a scintilla of

evidence" establishing the challenged elements' existence and may use both direct and circumstantial evidence in doing so. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600-601. More than a scintilla exists when the evidence is such that it "would enable reasonable and fair-minded people to differ in their conclusions." *Id.* at 601 (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). If the nonmovant's evidence provides a basis for conflicting inferences, a fact issue arises. *Randall v. Dall. Power & Light Co.*, 752 S.W.2d 4, 5 (Tex. 1988) (per curiam). Moreover, there is a presumption that evidence favorable to the nonmovant will be taken as true, every reasonable inference will be indulged in favor of the nonmovant, and any doubts will be resolved in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

B. TRADITIONAL MOTION FOR SUMMARY JUDGMENT.

**Under a traditional summary judgment standard, the movant for summary judgment must first state specifically the grounds for summary judgment**. Tex. R. Civ. P. 166a(c). Moreover, a defendant who moves for summary judgment must disprove at least one element of each of the plaintiff's causes of action. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curium). Therefore, the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–549 (Tex. 1985). Unless the movant's motion and evidence meet this standard, the non-movant is not required to respond to the summary judgment motion at all. *Rhone-Poulenc v. Steel*, 997 S.W.2d 217, 222-223 (Tex. 1999). In determining whether the movant has carried its burden, all evidence favorable to the non-movant must be taken as true, every reasonable inference must be indulged in favor of the non-movant, and any doubts must be resolved in the non-movant's favor. *Nixon*, 690 S.W.2d at 548-549. Evidence favoring the movant's

position will not be considered unless it is uncontroverted. *Davis v. City of Grapevine*, 188 S.W.3d 748 (Tex. App. - Fort Worth 2006) (citing *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965)).

III.   PLAINTIFF SHOWS A GENUINE DISPUTE AS TO MATERIAL FACTS REGARDING HER WORKERS' COMPENSATION RETALIATION CLAIM, AND DEFENDANT CANNOT SHOW IT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.

Under Texas law, "[a] person may not discharge or in any other manner discriminate against an employee because the employee has ... filed a workers' compensation claim in good faith". Tex. Labor Code §451.001(1); *Dillard Dept. Stores v. Hecht*, 225 S.W.3d 109, 116-117 (Tex. App. - El Paso 2005).

"In order to succeed on a claimed violation of Section 451.001, the employee must show that the termination or other discrimination would not have occurred when it did but for the employee's assertion of a compensation claim." *Hecht*, 225 S.W.3d at 117 (quoting *Continental Coffee Products, Co. v. Cazarez*, 937 S.W.2d 444, 450-51 (Tex. 1996)).

A.   DEFENDANT CANNOT SHOW IT IS ENTITLED TO JUDGMENT, BECAUSE PLAINTIFF SHOWS AS A MATTER OF LAW THAT EMPLOYERS AEROTEK AND SCHNEIDER ARE PLAINTIFF'S COEMPLOYERS UNDER TEXAS LABOR CODE§91.042(C)AND §91.001(11).

Under Texas statutory authority, a staffing agency and its client company are "coemployers".

> For workers' compensation insurance purposes, a license holder and the license holder's client shall be coemployers. If either a license holder or a client elects to obtain workers' compensation insurance coverage for covered employees, the client and the license holder are subject to Sections 406.005, 406.034, 408.001, and 411.032.

Texas Labor Code §91.042(c); Texas Labor Code §91.001(11) ("'License holder' means a person licensed under this chapter to provide professional employer services."); *Garza v. Excel Logistics*, 100 S.W.3d 280, 284 (Tex. App. - Houston [1st] 2002) ("When two entities have joint control over an

employee's work, they are co-employers.") (citing *White v. Liberty Eylau Sch. Dist.*, 880 S.W.2d 156, 159 (Tex. App. - Texarkana 1994, writ denied)).

Additionally, the United States District Court for the Western District of Texas has previously ruled -- **when ruling against the same Defendant, Schneider Electric** -- that "[w]here a staffing agency supplies workers to a client company, the client company may also be held liable where it is found to be a **"joint employer" that exerts a sufficient degree of control over the employee**." *Meraz v. Volt Management Corp., et al.*, Case 3:16-cv-00155-FM, Ecf 74, "Order Denying Schneider Electric Defendants' Motion For Summary Judgment And Volt Management Corporation's Motion For Summary Judgment", p. 7 (W.D. Tex., July 7, 2017) (citing *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 228-29 (5th Cir. 2015)). Specifically, the District Court explained:

> In order to determine whether the client company meets these criteria, the court applies the "hybrid economic realities/common law control test." The test consists of two components: the common law control component and the economic realities component. **The common law control component considers "whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule."** The economic realities component focuses "on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment."
> [...]
> As **the court must "emphasize" the common law control portion of the test**, however, Schneider's lack of economic power over Plaintiff is not dispositive.
> [...]
> **Where an entity has the right to supervise an employee for infractions and demand that he be terminated, it constitutes an employer for ADA purposes.**

*Meraz*, Case 3:16-cv-00155-FM, Ecf 74, pp. 7-9 (footnotes omitted) (emphasis added).

In the instant case, Co-Defendant Acrotek, Inc. ("Employer Acrotek") is a staffing agency which employs Employee Ramirez, *Deposition of Maria Ramirez*, 12:7-8; 51:20-25 (*Exhibit A*), and assigns Employee Ramirez to work at Co-Employer Schneider, *Ramirez Depo*, 56:3-5 (*Ex. A*).

111

While Employee Ramirez is assigned to work for Employer Schneider, **Employer Schneider trains Employee Ramirez**, *Ramirez Depo*, 99:16-100:14 (*Ex. A*), **Employer Schneider disciplines or recommends discipline against Employee Ramirez**, *Deposition of Ben Diaz*, 25:2-8; 39:15-24 (*Exhibit I*); (*Exhibit B*, Acrotek's "Disciplinary Action Report" based on Schneider Electric's recommendation), and **Employer Schneider admits, in its interrogatory answers, that it demanded Employee Ramirez be terminated** when it demanded Co-Employer Acrotek staffing agency end Employee Ramirez' assignment to Employer Schneider (*Ex. C*, Schneider Answer to Interrogatory No. 9) ("Schneider Electric requested that Acrotek end Plaintiff's temporary assignment on April 7, 2018.").

For these reasons, Employee Ramirez shows both, that as a matter of law under the Texas Labor Code, and alternatively as a genuine question of material fact that Employers Acrotek and Schneider are Employee Ramirez' co-employers. Texas Labor Code §91.042(c); *Garza*, 100 S.W.3d at 284; *White*, 880 S.W.2d at 159. Thus, Employer Schneider cannot prove, conclusively as it must, it is entitled to judgment as a matter of law, and the Court must rightly deny the Motion under these facts. Tex. R. Civ. P. 166a(i); *Tamaz*, 206 S.W.3d at 581-582; Tex. R. Civ. P. 166a cmt. −1997; *Johnson*, 73 S.W.3d at 207; *Ford Motor Co.*, 135 S.W.3d at 600-601; *Havner*, 953 S.W.2d at 711; *Randall*, 752 S.W.2d at 5; *Nixon*, 690 S.W.2d at 548-549; Tex. R. Civ. P. 166a(c); *Rhone-Poulenc*, 997 S.W.2d at 222-223; *Davis*, 188 S.W.3d 748; *Great Am. Reserve Ins. Co.*, 391 S.W.2d at 47.

B. Defendant Cannot Show it is Entitled to Judgment as a Matter of Law, as Employers Acrotek and Schneider are Plaintiff's Co-Employers, and Employer Acrotek Has a Workers' Compensation Insurance Policy Covering Plaintiff. Therefore Co-Employer Schneider is Liable to Plaintiff Under Texas Workers' Compensation Laws.

Under Texas statutory authority, for workers' compensation purposes, a staffing agency and its client company are "coemployers", and when either the staffing agency or the client

112

company has a workers' compensation insurance policy covering the staffing agency's employee leased to the client company, both the staffing agency and the client company are liable to the employee under Texas workers' compensation laws.

> For workers' compensation insurance purposes, a license holder and the license holder's client shall be coemployers. If either a license holder or a client elects to obtain workers' compensation insurance coverage for covered employees, the client and the license holder are subject to Sections 406.005, 406.034, 408.001, and 411.032.

Texas Labor Code §91.042(c); Texas Labor Code §91.001(11) ("'License holder' means a person licensed under this chapter to provide professional employer services."); Texas Labor Code §408.001(a) ("Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee."); *Brown v. Aztec Rig Equipment, Inc.*, 921 S.W.2d 835 (Tex. App. - Houston [14th] 1996) (holding that for workers' compensation purposes, a staffing agency and its client company are co-employers, and the staffing agency's workers' compensation insurance policy covers the client company); *Garza*, 100 S.W.3d at 288 (holding that when a staffing company has a workers' compensation insurance policy covering an employee the staffing company assigns to work at a client company, a workers' compensation claim is the exclusive remedy of the employee against the client company).

Co-Employer Acrotek is a staffing agency which employs Employee Ramirez, *Maria Ramirez Depo*, 12:7-8; 51:20-25 (*Ex. A*), and assigns Employee Ramirez to work at Co-Employer Schneider, *Ramirez Depo*, 56:3-5 (*Ex. A*). Accordingly, for workers' compensation purposes, Employers Acrotek and Schneider are Employee Ramirez' co-employers. Texas Labor Code §91.042(c); *Brown*, 921 S.W.2d 835; *Garza*, 100 S.W.3d at 288.

Employer Schneider admits "Aerotek provides its employees with workers' compensation coverage." (Motion, p. 2, ¶2). Accordingly, **under Texas law, Co-Employers Aerotek and Schneider are liable to Plaintiff under Texas workers' compensation laws**, with a workers' compensation claim as the exclusive remedy for Employee Ramirez against Employer Schneider. Texas Labor Code §91.042(c); *Brown*, 921 S.W.2d 835; *Garza*, 100 S.W.3d at 288. **As Employee Ramirez' workers' compensation claim is her exclusive remedy against Employer Schneider, Employer Schneider is subject to liability under section 451.001** -- prohibiting Employer Schneider from "discharg[ing] or in any other manner discriminat[ing] against [Employee Ramirez] because [Employee Ramirez] has ... filed a workers' compensation claim in good faith". Tex. Labor Code §451.001(1); *Hecht*, 225 S.W.3d at 116-117.

Nevertheless, Employer Schneider ignores Texas statutes, Texas Labor Code §91.042(c), and case law, *Brown*, 921 S.W.2d 835; *Garza*, 100 S.W.3d at 288, and falsely alleges it cannot be held liable for Employee Ramirez' Workers' Compensation Retaliation claim because Employer Schneider's own workers' compensation insurance policy did not cover Employee Ramirez. (Motion, p. 6).

For the reasons discussed *supra*, this is not the law in Texas. Texas Labor Code §91.042(c); *Brown*, 921 S.W.2d 835; *Garza*, 100 S.W.3d at 288.

In support of its position, Employer Schneider cites to a Fifth Circuit case, rather than Texas authority. (Motion, pp. 4-5) (citing *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 241-243 (5th Cir. 2015)). However, *Burton* is inapplicable for several reasons.

First, in *Burton*, the Fifth Circuit made an "*Erie* guess" on what decision the Texas Supreme Court would reach. *Burton*, 798 F.3d at 242. An *Erie* guess by the Fifth Circuit as to what

114

law Texas courts will follow does not make the decision for Texas courts or establish any binding precedent on Texas state courts. *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) ("While Texas courts may certainly draw upon the precedents of the Fifth Circuit, or any other federal or state court, in determining the appropriate federal rule of decision, they are *obligated* to follow only higher Texas courts and the United States Supreme Court.") (emphasis in original) (citing *Mohamed v. Exxon Corp.*, 796 S.W.2d 751, 753-54 (Tex.App. — Houston [14th Dist.] 1990, writ denied); *Turner v. PV Int'l Corp.*, 765 S.W.2d 455, 470 (Tex.App. — Dallas 1988), writ denied per curiam on other grounds, 778 S.W.2d 865 (Tex. 1989); *Barstow v. State*, 742 S.W.2d 495, 500-01 n. 2 (Tex.App. — Austin 1987, writ denied); *Summertree Venture III v. Federal Sav. Loan Ins. Corp.*, 742 S.W.2d 446, 450 (Tex. App. — Houston [14th Dist.] 1987, writ denied)). Accordingly, *Burton* is not binding precedent on this Court.

Second, *Burton* misstates Texas law. Specifically, the Fifth Circuit never addresses Texas statutory authority that when a the staffing agency has a workers' compensation insurance policy covering the staffing agency's employee leased to a client company, the client company is liable to the employee under Texas workers' compensation laws.

> For workers' compensation insurance purposes, a license holder and the license holder's client shall be coemployers. **If either a license holder or a client elects to obtain workers' compensation insurance coverage for covered employees, the client and the license holder are subject to Sections** 406.005, 406.034, **408.001**, and 411.032.

Texas Labor Code §91.042(c) (emphasis added); Texas Labor Code §408.001(a) ("Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.").

115

The Fifth Circuit's *Burton* opinion similarly ignores controlling Texas case law in accord with the statute. *Brown*, 921 S.W.2d 835 (holding that for workers' compensation purposes, a staffing agency and its client company are co-employers, and the staffing agency's workers' compensation insurance policy covers the client company); *Garza*, 100 S.W.3d at 288 (holding that when a staffing company has a workers' compensation insurance policy covering an employee the staffing company assigns to work at a client company, a workers' compensation claim is the exclusive remedy of the employee against the client company); *see also Brown*, 921 S.W.2d at 841-842 (citing *Cherry v. Chustz*, 715 S.W.2d 742, 743 (Tex. App. — Dallas 1986, no writ); *Marshall v. Toys-R-Us Nytex, Inc.*, 825 S.W.2d 193, 194 (Tex. App. — Houston [14th Dist.] 1992, writ denied); *Gibson v. Grocers Supply, Co., Inc.*, 866 S.W.2d 757, 759 (Tex. App. — Houston [14th Dist.] 1993, no writ); *Pederson v. Apple Corrugated Packaging, Inc.*, 874 S.W.2d 135, 136-37 (Tex. App. — Eastland 1994, writ denied); *Rodriguez v. Martin Landscape Management, Inc.*, 882 S.W.2d 602, 603 (Tex. App. — Houston [14th Dist.] 1994, no writ)).

> In *Pederson v. Apple Corrugated Packaging, Inc.*, 874 S.W.2d 135 136-37 (Tex.App. — Eastland 1994, writ 842 denied), the plaintiff was employed by Staff Benefits and assigned to Apple. The plaintiff was injured on Apple's premises while under Apple's direction and control. *Id.* The plaintiff sought and received workers' compensation benefits from Staff Benefits' insurance carrier. The plaintiff then filed a negligence suit against Apple alleging that even though it had the right to control her work, Apple was not a subscriber under the Act. *Id.* The trial court granted Apple's motion for summary judgment based on the exclusive remedy provision. *Id.* The appellate court affirmed, holding that the plaintiff was a "covered employee" of Apple because Apple carried its workers' compensation insurance "through an arrangement" with Staff Benefits. *Id.* at 137-38.

*Brown*, 921 S.W.2d at 841-842. Accordingly, as *Burton* misstates Texas law, it is not binding precedent on this Court. *Williams*, 868 S.W.2d at 296; *Mohamed*, 796 S.W.2d at 753-54; *Turner*, 765 S.W.2d at 470; *Barstow*, 742 S.W.2d at 500-01 n. 2; *Summertree Venture III*, 742 S.W.2d at 450.

For these reasons, Co-Employer Schneider is liable to Employee Ramirez under Texas workers' compensation laws. Texas Labor Code §91.042(c); *Brown*, 921 S.W.2d 835; *Garza*, 100

116

S.W.3d at 288; *see also Cherry*, 715 S.W.2d at 743; *Marshall*, 825 S.W.2d at 194; *Gibson*, 866 S.W.2d at 759; *Pederson*, 874 S.W.2d at 136-137; *Rodriguez*, 882 S.W.2d at 603.

Thus, Employer Schneider cannot prove, conclusively as it must, it is entitled to judgment as a matter of law, and the Court should rightly deny the Motion. Tex. R. Civ. P. 166a(i); *Tamaz*, 206 S.W.3d at 581-582; Tex. R. Civ. P. 166a cmt. −1997; *Johnson*, 73 S.W.3d at 207; *Ford Motor Co.*, 135 S.W.3d at 600-601; *Havner*, 953 S.W.2d at 711; *Randall*, 752 S.W.2d at 5; *Nixon*, 690 S.W.2d at 548-549; Tex. R. Civ. P. 166a(c); *Rhone-Poulenc*, 997 S.W.2d at 222-223; *Davis*, 188 S.W.3d 748; *Great Am. Reserve Ins. Co.*, 391 S.W.2d at 47.

C. Defendant Cannot Show it is Entitled to Judgment as a Matter of Law, as Plaintiff Shows a Genuine Question of Material Fact that Defendant Receives Plaintiff's Report of Her Workplace Injury, and is Aware of Plaintiff's Workers' Compensation Claim.

On or about November 7, 2017, Employer Aerotek hires Employee Ramirez to work at Co-Employer Schneider, and Employer Schneider begins training Employee Ramirez. *Ramirez Depo*, 12:7-8; 51:20-25; 56:3-5; 73:13-19; 99:16-100:14 (*Ex. A*). Specifically, Employers Aerotek and Schneider hire Employee Ramirez to work in the Quality Control Department. *Ramirez Depo*, 79:10-11 (*Ex. A*). Employers Aerotek and Schneider know Employee Ramirez has experience as a quality control supervisor. *Ramirez Depo*, 43:14-44:11; 54:12-55:18 (*Ex. A*). **At no time during her employment with Schneider and Aerotek, did Schneider and Aerotek issue any write-up for any employment performance deficiency to Employee Ramirez.** *Corporate Deposition, Horacio Ramirez*, 26:22-27:2; 30:16-22 (*Exhibit P*).

On April 7, 2018, Employer Schneider, specifically through Supervisor Jesus Estrada, is *first* made aware of Employee Ramirez' injury when he receives Employee Ramirez' report that she sustains an on-the-job injury. *Ramirez Depo*, 133:16-135:15; 151:11-20 (*Ex. A*). That same day on April 7, 2018 Employer Schneider's Senior Manufacturing Supervisor César Hernández also

receives Employee Ramirez' report that she sustains an on-the-job injury. *Ramirez Depo*, 151:11-20 (*Ex. A*).

Then, on April 8, 2018, Employer Schneider's nurse receives Employee Ramirez' report of her on-the-job injury, along with Supervisor Estrada whom had received the report the day prior on April 7. *Ramirez Depo*, 153:1-19; 159:15-21 (*Ex. A*).

On or about April 8 or 9, 2018, Employers Schneider and Acrotek receive notice Employee Ramirez files a workers' compensation injury report. (*Exhibit R*, Complete Emergency Care "Workers' Compensation Injury" Report, Ramirez 000068).

On April 9, 2018, Employer Acrotek's Onsite Manager Esther Flores receives Employee Ramirez' email reporting her injury. (*Exhibit K*, Employee Ramirez' April 9, 2018 email to Esther Flores, Ramirez 000076); *Ramirez Depo*, 159:22-160:2 (*Ex. A*).

Thus, as Employee Ramirez shows a genuine question of material fact that Employer Schneider receives Employee Ramirez' report of her workplace injury, and is aware of Employee Ramirez' workers' compensation claim, Employer Schneider cannot prove, conclusively as it must, it is entitled to judgment as a matter of law, and the Court should rightly deny the Motion. Tex. R. Civ. P. 166a(i); *Tamaz*, 206 S.W.3d at 581-582; Tex. R. Civ. P. 166a cmt. −1997; *Johnson*, 73 S.W.3d at 207; *Ford Motor Co.*, 135 S.W.3d at 600-601; *Havner*, 953 S.W.2d at 711; *Randall*, 752 S.W.2d at 5; *Nixon*, 690 S.W.2d at 548-549; Tex. R. Civ. P. 166a(c); *Rhone-Poulenc*, 997 S.W.2d at 222-223; *Davis*, 188 S.W.3d 748; *Great Am. Reserve Ins. Co.*, 391 S.W.2d at 47.

D. Defendant Cannot Show it is Entitled to Judgment as a Matter of Law, as Plaintiff Shows a Genuine Question of Material Fact that Defendant Retaliates Against Plaintiff by Terminating Plaintiff at Least in Part for Plaintiff's Reporting an On-the-Job Injury and Making a Workers' Compensation Claim.

"The first type of prohibited discriminatory behavior identified in the statute [Tex. Labor Code §451.001]—discharge—is a classic example of a tangible employment action." *Shelby*

118

*Distributions, Inc. v. Reta*, 441 S.W.3d 715, 719 (Tex. App. - El Paso 2014) (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998)).

**"To prove a violation of Section 451.001, it is not necessary to show that a workers' compensation claim was the sole motivation for the termination."** *Echostar Satellite L.L.C. v. Aguilar*, 394 S.W.3d 276, 287 (Tex. App. - El Paso 2012) (citing *Continental Coffee Products Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996)).

Circumstantial evidence showing a causal link between a termination and the filing of a workers' compensation claim includes, but is not limited to:

1. Knowledge of the compensation claim by those making the decision to terminate;

2. Temporal proximity of the termination to the date of the injury or claim;

3. Evidence that the stated reason for the discharge was false; and

4. Failure to adhere to established company policies.

*Echostar Satellite L.L.C.*, 394 S.W.3d at 287-288.

**On April 7, 2018,** the same day on which Employee Ramirez was injured at work, **but** *after* **Schneider Supervisor Estrada receives Employee Ramirez' report of her injury, Schneider Supervisor Estrada then recruits another Schneider manager, Senior Manufacturing Supervisor Cesar Hernández, to report that Employee Ramirez was working in a testing booth without her safety gloves on and to recommend to Employer Schneider's Human Resources Manager, Ben Diaz, that Employee Ramirez be terminated.** (*Exhibit H*, "Affidavit of César Hernández"). Senior Manufacturing Supervisor Hernández wholly relies on Supervisor Estrada's recommendation, without any investigation himself, when he sends an email to Human Resources Manager Diaz recommending the termination of Employee Ramirez. (*Ex. H*, Ramirez 000767-000769). Senior

119

Manufacturing Supervisor Hernández later recanted under oath, explaining he "never saw Maria not wear her safety gloves" and "it was actually Jesus Estrada and Santiago Segovia who were the ones who told me to put that in my email". (*Ex. H*, Ramirez 000767). As the cat's paw, Human Resources Manager Diaz merely does Supervisor Estrada's bidding when he directs Employer Acrotek to end Employee Ramirez' assignment -- terminate her. *Diaz Depo*, 13:18-21; 17:16-22; 18:5-7, 10-11; 23:3-10; 48:3-6, 9-13 (*Ex. I*); (*Ex. H*, April 7, 2018 email from Ben Diaz to Esther Flores directing Flores to terminate Employee Ramirez, Ramirez 000768).

On April 20, 2018, Employer Acrotek's Onsite Manager Esther Flores terminates Employee Ramirez. *Deposition of Esther Flores*, 17:18-20, 22; 18:8-11 (*Exhibit J*); *Deposition of Priscilla Petersen*, 70:15-20, 23-25; 71:12-21 (*Exhibit Q*) (testifying Acrotek terminates Ramirez at Schneider's request, as Schneider "would not terminate the assignment" of an employee).[1]

1. Plaintiff shows a genuine question of material fact that Defendant's employees who knew of Plaintiff's report of her workplace injury and her workers' compensation claim were the decision makers in Plaintiff's termination.

In the seminal case of ***Staub v. Proctor Hosp.***, **the United States Supreme Court recognized that "[a]n employer's authority to reward, punish, or dismiss is often allocated among multiple agents. The one who makes the ultimate decision does so on the basis of performance assessments by other supervisors."** *Staub v. Proctor Hosp*, 131 S. Ct. 1186, 1192-1193 (2011) (Scalia, J., discussing the famous cat's paw analogy and his analysis).

---

[1] Employer Acrotek's Employee Relations Specialist Priscilla Petersen testifies Employer **Schneider Electric did not produce any witness statements, video, or write-ups to substantiate the claim that Employee Ramirez removed her safety gloves, except for the claim of Supervisor Estrada.** *Petersen Depo*, 66:12-14, 16-20; 66:25-67:2, 5; 68:19-21, 23; 69:11-12, 14-18, 20-23, 25 (*Ex. Q*).

As the adduced evidence shows, Supervisor Estrada falsely accused Employee Ramirez of a safety violation and then recommended her termination and so his discriminatory animus is imputed onto Joint Employers Acrotek and Schneider, even if Supervisor Estrada did not directly make the decision to terminate Employee Ramirez. *Staub*, 131 S. Ct. at 1194 (holding that if a supervisor performs an act motivated by discriminatory animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, **then the employer is liable**.).

This evidence is important for several reasons. **First**, it shows that Supervisor Estrada tried to hide the fact that *he* -- Estrada -- was the one making the false report that Employee Ramirez was not wearing her safety gloves. (*Ex. H*, Cesar Hernandez Aff.). **Second**, it shows that Estrada was also trying to hide the fact that *he* -- Estrada himself -- was the one recommending Maria Ramirez's termination and not Cesar Hernandez. (*Ex. H*, Cesar Hernandez Aff.). **Third**, Cesar Hernandez' testimony proves that it is *only after* Employee Ramirez reports her injury and disability *to Estrada*, that Supervisor Estrada recruits him -- Cesar Hernandez -- who has no personal knowledge of the purported policy violation to then make the false report[2] and to recommend that her assignment be terminated. (*Ex. H*, Cesar Hernandez Aff.). **And Fourth**, because Estrada makes this false report and recommendation to terminate mere minutes or hours after Employee Ramirez has made her report, such suffices to show a causal connection between her protected activity and the retaliatory discharge. *See Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 84 (Tex. App. - El Paso 1992, no writ) (finding retaliatory motive where employee fired a few days following injury in order to deny employee ability to file claim). Accordingly, pursuant to

---

[2] As discussed *supra*, Employee Ramirez denies and refutes that she ever worked in a testing booth without her safety gloves on and affirmatively testifies that she always worked with her safety gloves on. *Ramirez Depo*, 84:7-16; 107:2-22; 110:11-23; 112:10-14 (*Ex. A*).

controlling United States Supreme Court authority, Supervisor Estrada's discriminatory animus is imputed onto Joint Employer Schneider (and Acrotek), even if Supervisor Estrada did not directly make the decision to terminate Employee Ramirez, which termination was effected on April 20, 2018. *Staub*, 131 S. Ct. at 1194.

For these reasons, Employee Ramirez shows a genuine question of material fact that Employer Schneider's employees who knew of Employee Ramirez' report of her workplace injury and her workers' compensation claim were the decision makers in Employee Ramirez' termination. *Echostar Satellite L.L.C.*, 394 S.W.3d at 287.

### 2. Plaintiff shows a genuine question of material fact regarding the temporal proximity between her date of the injury or workers' compensation claim and her termination.

In Texas, close timing between an employee's date of the injury or workers' compensation claim and her termination may provide the "causal link" required for a case of retaliation. *Echostar Satellite L.L.C.*, 394 S.W.3d at 288; *see, e.g., Porterfield v. Galen Hosp. Corp., Inc.*, 948 S.W.2d 916, 919 (Tex. App. - San Antonio 1997, writ denied) (citing *Munoz v. H & M Wholesale, Inc.*, 926 F.Supp. 596, 610 (S. D. Tex.1996)) (finding retaliatory motive where employee fired within one month of filing workers' compensation claim); *Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 84 (Tex. App. - El Paso 1992, no writ) (finding retaliatory motive where employee fired a few days following injury in order to deny employee ability to file claim); *Texas Dept. of State Health Services v. Rockwood*, 468 S.W.3d 147, 157-158 (Tex. App. - San Antonio 2015, no pet.) ("we hold this temporal proximity of approximately one month to be sufficient to raise a fact issue on the causation element of Rockwood's retaliatory discharge claim"); *Tex. Dep't of Criminal Justice v. Flores*, 555 S.W.3d 656, 668-669 (Tex. App. - El Paso 2018) (holding a five-month time gap between the protected activity and the adverse employment action "raises a fact issue on

122

causation vis-à-vis any temporal proximity."). The evidence in the case at bar is even closer because Employers Schneider and Acrotek fired Employee Ramirez is, at most, *merely less than two weeks* after she first reported her worker's compensation injury, or as little as several hours after she was injured, as shown below.

On April 7, 2018, Human Resources Manager Diaz, as the cat's paw,[3] directs Employer Acrotek to end Employee Ramirez' assignment -- i.e. terminate her. *Diaz Depo*, 13:18-21; 17:16-22; 18:5-7, 10-11; 23:3-10; 48:3-6, 9-13 (*Ex. I*); (*Ex. H*, April 7, 2018 email from Ben Diaz to Esther Flores directing Flores to terminate Employee Ramirez, Ramirez 000768). *Staub*, 131 S. Ct. at 1194.

**On April 20, 2018, Onsite Manager Flores terminates Employee Ramirez**, *Flores Depo*, 17:18-20, 22; 18:8-11 (*Ex. J*); *Petersen Depo*, 70:15-20, 23-25; 71:12-21 (*Ex. Q*), **a mere thirteen (13) days after receiving notice of Employee Ramirez' on-the-job injury**, *Ramirez Depo*, 133:16-135:15; 151:11-20 (*Ex. A*).

As the temporal proximity between Employer Acrotek and Employer Schneider's receipt of Employee Ramirez' first report of her on-the-job injury and Acrotek and Schneider's decision to terminate Employee Ramirez is either (1) only hours (less than a day) from Schneider's Estrada-to-Hernandez-to-Diaz request to terminate to Acrotek's Flores or (2) merely thirteen (13) days from the date of Acrotek's pulling of the trigger to terminate, Employee Ramirez shows a genuine question of material fact regarding the temporal proximity between her date of the injury or workers' compensation claim and her termination. *Staub*, 131 S. Ct. at 1194; *Echostar Satellite L.L.C.*, 394 S.W.3d at 288; *Porterfield*, 948 S.W.2d at 919; *Munoz*, 926 F.Supp. at 610; *Arias*, 831 S.W.2d at 84.

---

[3] *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1192-1193 (2011) (Scalia, J., discussing the famous cat's paw analogy and his analysis).

3. Plaintiff shows a genuine question of material fact that Defendant's stated reason for Plaintiff's discharge is false and mere pretext.

Employers Acrotek and Schneider allege they terminated Employee Ramirez "because of repeated unsafe conditions where she forgot to put her gloves twice [sic]". (*Ex. H*, Ramirez 000769). However, **Employer Schneider's own Corporate Representative, during the Corporate Representative Deposition, could not identify any alleged violation.** *Diaz Depo*, 21:20-22:3 (*Ex. I*). Employer Schneider's Corporate Representative admits Employer Schneider did not discipline Employee Ramirez for these alleged, unidentified safety violations, or maintain any record of the alleged safety violations. *Diaz Depo*, 39:3-10 (*Ex. I*). Employer Schneider then points the finger at Acrotek, claiming this is because *Employer Aerotek* -- as Employee Ramirez' staffing company -- is in charge of any disciplinary actions. *Diaz Depo*, 24:2-25:8; 39:11-24 (*Ex. I*). For its part, Employer Acrotek's Corporate Representative points its finger *at Schneider*, claiming that it does not have any record of Employee Ramirez' alleged, "repeated" safety violations, because that it is the responsibility of *Employer Schneider* -- as the client company -- to maintain such records. *Deposition of Horacio Ramirez*, 27:14-16, 18-21; 29:22-30:1, 4-8, 19-22 (*Exhibit P*). To wit, Employers Acrotek's and Schneider's "evidence" for showing Employee Ramirez had engaged in "repeated" safety violations is merely to point at each other for the lack thereof, which is not evidence.

Although Employers Acrotek and Schneider each allege they terminated Employee Ramirez "because of repeated unsafe conditions where she forgot to put her gloves twice [*sic*]" (*Ex. H*, Ramirez 000769), they cannot, do not, produce *any* evidence documenting the alleged safety violations for these "repeated unsafe conditions", and instead point at each other as the cause of this evidentiary void. *Diaz Depo*, 21:20-22:3; 24:2-25:8; 39:3-24 (*Ex. I*); *Horacio Depo*, 27:14-16, 18-21; 29:22-30:1, 4-8, 19-22 (*Ex. P*). Thus, in pointing at each other, Employers

Acrotek and Schneider comically expose the truth: these **fictitious** "safety violations" -- for which there is no proof -- are mere pretext for covering up their true illegal motivations. *Diaz Depo*, 24:2-25:8; 39:11-24 (*Ex. I*); *Horacio Depo*, 27:14-16, 18-21; 29:22-30:1, 4-8, 19-22 (*Ex. P*).

**Employee Ramirez denies and refutes that she ever worked in a testing booth without her safety gloves on and affirmatively testifies that she always worked with her safety gloves on.** *Ramirez Depo*, 84:7-16; 107:2-22; 110:11-23; 112:10-14 (*Ex. A*).

> Q. And did you have to wear gloves?
> A. Yes, ma'am.
> Q. And what kind of gloves did you have to wear?
> A. We had to wear a regular glove, a latex glove, I guess. It would -- like plastic. And then, on top of that, those other gloves when we were running electricity through the machine.
> Q. And they're special electric -- electrical-resistant gloves, right?
> A. Yes, ma'am.

*Ramirez Depo*, 84:7-16 (*Ex. A*).

> Q. Tell me about when that happened.
> A. Mr. Estrada came in, and I was with the other gentlemen that we were testing the unit. And when we finished testing the unit -- because I wasn't allowed to actually test the unit myself -- he's like, Okay, we're done.  And then you wave your hand to shut off the electricity, right?  So everything shuts off automatically.
>
> He waved his hand, shut off the electricity, and we started taking off our gloves. And Estrada was standing the whole time we were doing this, and he starts screaming. He goes, Why are your gloves off? **I'm like, My gloves aren't off.** He goes, Your gloves are off. **I go, No, my gloves aren't off.** And he's like, Get out of the booth. Okay.
>
> I got out of the booth. He's like, You cannot be in the booth when the electricity is on without your gloves. I'm like, I know that. He goes, Your gloves were off. **I go, My gloves were not off.** And he goes, You know what, let's just leave it at that. I'm like, Fine. And that was it.

*Ramirez Depo*, 107:2-22 (*Ex. A*) (emphasis added).

> A. **There wouldn't be no way I would be in that without gloves.  I'm not dumb.**
> Q. Right.  I understand.
> A. I'm sorry.
> Q. So that --
> A. **I wouldn't be in there without my gloves**, without my proper -- there was no way you could be in there, because even if an electric light would shoot out from the machine, you could get zapped, even with gloves or without gloves.  You know, that's why

125

you had to wear like special clothing, because just in case anything would zap in there, something wasn't hooked up right, something was electrical.
*Ramirez Depo*, 110:11-23 (*Ex. A*) (emphasis added).

A. No. Actually, when -- **when he asked me to get out of the booth, I still had my gloves on.** And he goes, You didn't have your gloves on. He goes, You were taking off your gloves. I go, No. He's like, We'll talk about this later, and he walked off.
*Ramirez Depo*, 112:10-14 (*Ex. A*) (emphasis added).

Accordingly, given the Texas Supreme Court's affirmation that, in ruling on a summary judgment, all evidence favorable to the non-movant must be taken as true, every reasonable inference must be indulged in favor of the non-movant, and any doubts must be resolved in the non-movant's favor, *Nixon*, 690 S.W.2d at 548–549, Employee Ramirez shows a genuine question of material fact that Employer Schneider's stated reason for Employee Ramirez' discharge is false and mere pretext, *Echostar Satellite L.L.C.*, 394 S.W.3d at 287.

4. Plaintiff shows a genuine question of material fact that Defendant did not adhere to established company policies when terminating Plaintiff.

Merely assuming *arguendo* that Employee Ramirez in fact had one or more safety violations where she did not wear her safety gloves, Supervisor Estrada's testimony shows why Employers Acrotek and Schneider cannot prove a legitimate non-discriminatory reason for their termination of Employee Ramirez, because Defendants did not previously follow their own policy concerning this termination. *Diaz Depo*, 11:11-12:15 (*Ex. I*); *Ramirez Depo*, 115:2-13; 161:23-162:15; 163:25-164:5; 188:24-189:13 (*Ex. A*); (*Ex. K*); (*Ex. D*). **Texas authority holds that terminating an employee for violating a previously unenforced policy -- or a policy which the defendant employer does not uniformly enforce -- constitutes evidence of pretext, *i.e.* is evidence that the true reason for termination is not the one stated by the employer but is, rather, more likely an illegal animus.** *Echostar Satellite L.L.C.*, 394 S.W.3d at 287.

126

Specifically, Employer Schneider's Corporate Representative testifies that had Employee Ramirez -- who worked in a testing booth and not the warehouse -- not worn her safety gloves, it would be grounds for "immediate termination." *Diaz Depo*, 11:11-12:15 (*Ex. I*). Even if Employee Ramirez had prior, "repeated" safety violations, which would have been grounds for "immediate termination", *Diaz Depo*, 11:11-12:15 (*Ex. I*), Employers Aerotek and Schneider did not terminate Employee Ramirez when these alleged, prior safety violations occurred.

Indeed, Employee Relations Specialist Petersen **also admits Employers Aerotek and Schneider did not write up, document or discipline Employee Ramirez for any of the alleged previous "repeated" safety violations** but instead assigned additional work. *Petersen Depo*, 67:17-68:10 (*Ex. Q*). In Texas, such is evidence of these Employers' illegal animus. *Echostar Satellite L.L.C.*, 394 S.W.3d at 287.

5. Plaintiff shows a genuine question of material fact that Defendant has a "pattern, practice and culture" of engaging in illegal discrimination and retaliation against workers who require an accommodation or temporary leave from work.

This "causal link" between Employee Ramirez' date of injury or workers' compensation claim and Employee Schneider's termination of Employee Ramirez, as discussed *supra*, is not the only evidence of an illicit motivating factor in the decision to terminate, however.

Controlling Texas precedent holds that evidence of discrimination against other employees within the same protected class is evidence of an illegal animus. Specifically, employees who have similarly reported a disability, physical impairment, mental or emotional impairment, injury, or work-place injury and were discharged are evidence of discriminatory intent. *Durbin v. Dal-Briar Corp.*, 871 S.W.2d 263, 268-269 (Tex. App. - El Paso 1994) (holding the trial court erred by excluding evidence of defendant's termination of other employees, supporting the claim that the employer discriminated and retaliated against the plaintiff as part

of "a routine practice or policy of discriminating against workers who suffered on-the-job injuries, and [the plaintiff] was one victim of that policy."); *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 407, 423-425 (Tex. App. - Corpus Christi 2003), rev'd on other grounds, 164 S.W.3d 386 (Tex. 2005) (approving the trial court's admission of "testimony by former [defendant's] employees regarding the company's alleged 'pattern and practice' of discrimination against other employees who had suffered work-related injuries", as "the rules of evidence allow the admission of evidence of the habit of a person, or of the routine practice of an organization, if the evidence is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.") (citing Tex. R. Evid. 406).

The testimony of an On-site Coordinator for a staffing company at Schneider, Maria G. Castañeda is important in this regard. Castañeda testifies as to Employer Schneider's discriminatory and retaliatory acts against employees who require an accommodation or temporary leave from work. (*Exhibit N*, Affidavit of Maria Castañeda, p. 2). Ms. Castañeda describes Employer Schneider's "pattern, practice and culture", as follows:

> Given my time in this position, I worked on a daily basis with Schneider Electric managers, supervisors and Human Resources managers and **I am intimately familiar with how Schneider Electric handled and treated their employees, including Schneider Electric's own employees**, employees leased from Volt (my employer) **and from other employee leasing companies such as Aerotek**, and In-Staff from which Schneider Electric also leased employees. [...]
>
> **Schneider Electric's managers, supervisors** and Human Resources Managers at the 1600 Northwestern Drive facility, the facility I am familiar with, **had a pattern, practice and culture of discriminating and retaliating against employees who were disabled, became disabled, or who were injured at work** and filed worker's compensation claims. **Indeed, Schneider Electric's HR Managers, managers and supervisors saw themselves as being above the law and believed that they did not have to follow any law against illegal discrimination or illegal retaliation** as described below. Needless to say, **this belief that Schneider Electric was above the law and that they did not have to follow any law against illegal discrimination or illegal retaliation was not solely limited to disabilities or workers' compensation claimants,** but to any

128

employee who dared to complain about sexual harassment, sex discrimination, age discrimination, race or ethnic discrimination. This belief turned into a pattern, practice and culture of discriminating and retaliating against their own employees and their leased employees who complained of illegal harassment or discrimination, as mentioned above.

(*Ex. N*, Affidavit of Maria Castañeda, p. 2) (emphasis added). Ms. Castañeda describes Employer

Schneider's "pattern, practice and culture", as follows:

The pattern was as follows: **If an employee was injured at work and filed a workers' compensation claim**, or became disabled, or complained of sex, age, race or any type of illegal discrimination or illegal harassment, **Schneider Electric was going to release, that is, end the assignment, terminate, that employee as soon as possible.** That was simply, their game plan.
[…]
**Numerous times I was told by Schneider Electric's Safety Manager Fernando Ramirez to terminate employees who had become disabled, or injured, or because of some other illegal reason,** including sexual harassment, or sex discrimination, as described above, precisely **because Schneider Electric either did not want to provide reasonable accommodations to their disabilities and or injury restrictions**, or deal with the complaint, **despite the fact that they, Safe[t]y Manager Fernando Ramirez and HR Manager Leonarda Ramirez, knew that discrimination and retaliation against disabled employees** and worker's compensation claimants, and against those who report other illegal conduct, such as sexual harassment, etc. **was illegal.**

When I would push back, asking them not to "release" or fire a disabled or injured employee, Safety Manager Ramirez would shrug his soldiers, and insist that we "release them," that is fire them, because "they did not want them there at Schneider because they were taking up a slot; that they needed an able working body there and not someone who was injured or disabled."
[…]
**This method of operation, of firing employees, retaliating against** Volt leased employee[s], **Aerotek leased employees** and In-Staff leased employees by Schneider Electric **was common practice whenever one of these employees was injured at work, or made any type of report or complaint, such as for sexual harassment or sex discrimination, age discrimination, race discrimination, disability discrimination etc.** That's just the way Schneider Electric runs its operation here in El Paso under both H.R. Managers Leonarda Ramirez **and H.R. Manager Ben Diaz.**

[...]
Numerous times, I had conversations with HR Manager Ramirez about firing/terminating/releasing [...] employees who engaged in other legally protected conduct. I would tell her not to let these types of employees go or fire them in this way because it was illegal. HR Manager Ramirez would say, "just do it [fire them], do what you have to

do; we're the customer and you're the client and we want them released." Schneider, through HR Manager Ramirez, other managers, including Fernando Ramirez, and other supervisors would just instruct us to let these employees go "due to performance" even though there were NO PREVIOUS write ups in the file about performance. **In other words, Schneider Electric would routinely make up false reasons to "release" or fire employees so Schneider Electric's managers didn't have to comply with the law.**

(*Ex. N*, Affidavit of Maria Castañeda, pp. 2, 5, 8-9) (emphasis added). *Durbin*, 871 S.W.2d at 268-269 (holding the trial court erred by excluding evidence of defendant's termination of other employees, supporting the claim that the employer discriminated and retaliated against the plaintiff as part of "a routine practice or policy of discriminating against workers who suffered on-the-job injuries, and [the plaintiff] was one victim of that policy."). Maria Castañeda further describes how Employer Schneider's H.R. Manager Ben Diaz instructs Ms. Castañeda to terminate an employee who requested a reasonable accommodation by falsely claiming the employee lied on her resume:

> In approximately the last week of March 2018, a Friday, I had been going back and forth with my HR Manager at Volt — Volt HR Manager Sandra Ferise— about an employee named Evelyn Gonzalez who had a pre-existing disability that was aggravated due to her driving the forklift for Schneider Electric. ... My Volt HR Manager Ferise asked me to speak to Schneider Electric's HR Manager Ben Diaz to let him know that we were to take her back with restrictions and to find out from him if we — Schneider Electric and Volt — were going to accommodate her. Because HR Manager Ben Diaz was not there I had to speak with Safety Manager Fernando Ramirez about accommodating Evelyn Gonzalez's restrictions. Safety Manager Fernando Ramirez said, "no, we can't do it, we can't accommodate her, there's no place to put her." At that time, I saw HR Manager Ben Diaz pass by and I asked him to come into Safety Manager Fernando Ramirez' office to discuss employee Evelyn Gonzalez. I explained to HR Manager Ben Diaz what I had just explained to Safety Manager Fernando Ramirez. At that time, Fernando Ramirez said, "I'm adamant that she is not coming back." ... **Ben Diaz then said, "well she [Evelyn Gonzalez] lied. She lied." I asked, "how did she lie." And HR Ben Diaz then said "she lied on her application because the application asked if she could perform her job." I said, the application doesn't say that.** I've done backgrounds for ADP for about 10 years and I've never seen it printed that an employer would ask that question. Then HR Ben Diaz says, "maybe you should implement that, you should ask if they are able to perform the job on the application." I said, okay. What else could I have said. **HR Ben Diaz, then said, "talk to your HR and let them know that we [Schneider Electric] are not going to accommodate her**

**[employee Evelyn Gonzalez] and she needs to be released." As stated above, being "released" means being fired but that's the term that Schneider Electric uses.**

(*Ex. C*, Affidavit of Maria Castañeda, pp. 6-7) (emphasis added).

This evidence buttresses and piles onto Plaintiff's evidence in this case where Employer Acrotek and Employer Schneider, in particular, make up false allegations (of multiple "repeated" violations by Employee Ramirez which are wholly unsubstantiated by *any* prior disciplinary write up, documentation, witness statements, or videos)[4] as a pretext to terminate Employee Ramirez in retaliation for reporting an on-the-job injury and filing a workers' compensation claim. *Ramirez Depo*, 84:7-16; 107:2-22; 110:11-23; 112:10-14; 115:2-13; 133:16-135:15; 151:11-20; 153:1-19; 159:15-160:2; 161:23-162:15; 163:25-164:5; 188:24-189:13 (*Ex. A*); (*Ex. D*); (*Ex. H*); *Diaz Depo*, 11:11-12:15; 13:18-21; 17:16-22; 18:5-7, 10-11; 21:20-22:3; 23:3-10; 24:2-25:8; 39:3-24; 48:3-6, 9-13 (*Ex. I*); *Flores Depo*, 17:18-20, 22; 18:8-11 (*Ex. J*); (*Ex. K*); *Horacio Depo*, 27:14-16, 18-21; 29:22-30:1, 4-8, 19-22 (*Ex. P*); *Petersen Depo*, 66:12-14, 16-20; 66:25-67:2, 5; 67:17-68:10; 68:19-21, 23; 69:11-12, 14-18, 20-23, 25; 70:15-20, 23-25; 71:12-21 (*Ex. Q*); (*Ex. R*).

Thus, as Employee Ramirez shows a genuine question of material fact that Employer Schneider retaliates against Employee Ramirez by terminating Employee Ramirez at least in part for Employee Ramirez' reporting an on-the-job injury and making a workers' compensation claim, Employer Schneider cannot prove, conclusively as it must, it is entitled to judgment as a matter of law, and the Court should rightly deny the Motion. Tex. R. Civ. P. 166a(i); *Tamaz*, 206 S.W.3d at 581-582; Tex. R. Civ. P. 166a cmt. −1997; *Johnson*, 73 S.W.3d at 207; *Ford Motor Co.*, 135 S.W.3d at 600-601; *Havner*, 953 S.W.2d at 711; *Randall*, 752 S.W.2d at 5; *Nixon*, 690 S.W.2d at

---

[4] As discussed *supra*, Employee Ramirez denies and refutes that she ever worked in a testing booth without her safety gloves on and affirmatively testifies that she always worked with her safety gloves on. *Ramirez Depo*, 84:7-16; 107:2-22; 110:11-23; 112:10-14 (*Ex. A*).

548-549; Tex. R. Civ. P. 166a(c); *Rhone-Poulenc*, 997 S.W.2d at 222-223; *Davis*, 188 S.W.3d 748; *Great Am. Reserve Ins. Co.*, 391 S.W.2d at 47.

IV.     PRAYER.

For the foregoing reasons, as Plaintiff shows a genuine dispute as to material facts regarding her Workers' Compensation Retaliation claim, and Defendant cannot show it is entitled to judgment as a matter of law, the Court should rightly deny Defendant's Motion in its entirety.

SIGNED on November 24, 2020.

Respectfully submitted,

**Chavez Law Firm**
2101 N. Stanton Street
El Paso, Texas 79902
(915) 351-7772
(915) 351-7773 facsimile

By: _____

**Enrique Chavez, Jr.**
State Bar No.: 24001873
enriquechavezjr@chavezlawpc.com
**Michael R. Anderson**
State Bar No.: 24087103
chavezlawfirm+manderson@chavezlawpc.com
**Christine A. Chavez**
State Bar No.: 24109717
CAChavez@ChavezLawPC.com
*Attorneys for Plaintiff*

132

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copy of the foregoing instrument was e-served through the court's e-filing system on November 24, 2020 to Defendant's counsel:

Schmoyer Reinhard LLP
8000 IH 10 West, Suite 1600
San Antonio, Texas 78230
Telephone: (210) 447-8033
Facsimile: (210) 447-8036
Christine E. Reinhard creinhard@sr-llp.com
Dylan Farmer dfarmer@sr-llp.com

Wick Phillips Gould & Martin, LLP
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255
Andrew M. Gould andrew.gould@wickphillips.com
Molly M. Jones molly.jones@wickphillips.com
Dana M. Hilzendager dana.hilzendager@wickphillips.com

Ray Pena & McChristian
5822 Cromo Drive
El Paso, Texas 79912
Telephone: (915) 832-7250
Facsimile: (915) 832-7333
Jefferey W. McElroy jmcelroy@raylaw.com

Enrique Chavez, Jr.
Michael R. Anderson
Christine A. Chavez

133

# Tab 4:

El Paso County - 327th District Court

Filed 12/1/2020 11:23 AM
Norma Favela Barceleau
District Clerk
El Paso County
2019DCV3145

**IN THE 327TH DISTRICT COURT
EL PASO COUNTY, TEXAS**

| | | |
|---|---|---|
| MARIA RAMIREZ, | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | **Cause No. 2019DCV3145** |
| | § | |
| AEROTEK, INC. and SCHNEIDER | § | |
| ELECTRIC USA, INC. d/b/a | § | |
| SCHNEIDER ELECTRIC, | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANT SCHNEIDER ELECTRIC USA, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff's Response makes only one argument relevant to Schneider Electric's Motion for Summary Judgment ("MSJ") – that even though Schneider Electric did not provide workers' compensation coverage to Plaintiff, it could still be liable for Tex. Lab. Code § 451.011 ("Section 451") workers' compensation retaliation because under the *Professional Employers Organization Act,* Texas Lab. Code Chapter 91 (the "PEO Act"), a client of a Professional Employer Organization ("PEO") is a *co-employer* for certain workers' compensation purposes. The main flaw in the argument is that **Aerotek is not a PEO**. As a result, the PEO Act is inapplicable. Plaintiff's other arguments concern the merits of her claim and are irrelevant to the MSJ.

**I.**
## PLAINTIFF'S RESPONSE FAILS TO REFUTE ANY OF THE UNDISPUTED FACTS

In its MSJ, Schneider Electric spelled out the undisputed, material facts demonstrating summary judgment dismissal is proper. Among them:

> (1) Schneider Electric contracts with staffing companies, including Aerotek, a global staffing company, to supply it with temporary personnel,

(2) Schneider Electric provides workers' compensation coverage to its direct employees but does not provide such coverage to temporary workers (including Ramirez), and

(3) Aerotek provides its workers with workers' compensation coverage.

MSJ ¶¶ 1-3. Nothing in Ramirez's Response disputes these statements.

## II.
## AEROTEK IS NOT A PEO, IS NOT LICENSED AS A PEO, AND IT ONLY SUPPLIES TEMPORARY PERSONNEL TO SCHNEIDER ELECTRIC

As set forth in the MSJ, Section 451 claims – workers' compensation retaliation – can only be lodged against the provider of workers' compensation benefits to a plaintiff. In fact, Texas permits employers to choose to not subscribe to workers' compensation, and those non-subscribing employers cannot be liable under Section 451 *because* it would make no sense for such an employer to intentionally discriminate against an individual for filing a workers' compensation claim when the entity is not the provider of such benefits. MSJ, p. 4. This was made clear by the Texas Supreme Court in *Tex. Mexican Ry. Co. v. Bouchet*, 963 S.W.2d 52, 56 (Tex. 1998):

> [T]here can be no doubt that only *employees of subscribers to the Act* can bring workers' compensation claims ... [and] only subscribers can be subject to [Section 451] claims. ... Forbidding retaliation against an employee for seeking monetary benefits under the [Act] presupposes that the employer is a subscriber.

*Id.* (emphasis added) (internal citations omitted).

Plaintiff responds by arguing—without evidence—that Aerotek is a PEO and that its client, Schneider Electric, is necessarily a co-employer based on the PEO Act. Response, pp. 1-2, 4-10. PEOs, however, are different from temporary staffing agencies in that they do not supply labor to worksites. Instead, PEOs co-employ a client's existing permanent workforce. *See* Tex. Lab. Code § 91.0011(a) ("A coemployment relationship is intended to be an ongoing relationship rather than a temporary or specific one . . . Coemployment is not a joint employment arrangement.").

Plaintiff's argument that the PEO Act applies fails for multiple reasons. First, it is undisputed that Aerotek provides only temporary personnel and that Ramirez herself was a

temporary worker on assignment to Schneider Electric. *See* MSJ, Ex. B, ¶ 2 and Ex. 3, ¶ 3. She admitted as much in her deposition. *See* Response, Exh. A, 64:18-25. Under the PEO Act, an entity that provides temporary personnel is expressly excluded from the statute. Tex. Labor Code § 91.001(14). The controlling *Robles v. Mount Franklin Food, L.L.C.* case addresses this exact issue:

> The [PEO Act], however, governs organizations that provide "Professional employer services" and excludes "temporary help[.]" Tex. Lab. Code Ann. § 91.001(14)(a). And the "co-employment relationship" means one that "is intended to be an ongoing relationship rather than a temporary or specific one[.]" Given the statutory definitions under the [PEO Act], that Chapter (found in Section 91 of the Labor Code) does not apply to Robles's [temporary] employment.

591 S.W.3d 158, 168 (Tex. App.—El Paso 2019, pet. denied).

Second, Texas requires PEOs to secure licensure through the Texas Department of Licensing and Regulation (*see* Tex. Lab. Code § 91.001(11)), and its website (tdlr.texas.gov/LicenseSearch/) shows that Aerotek is *not licensed* in Texas as a PEO. The Court can take judicial notice that Aerotek is not so licensed. Tex. R. Evid. 201(b).[1]

As a whole, Plaintiff's focus on alleged "co-employment" is a red herring, and she fails to cite to any authority involving a Section 451 claim that applies a co-employer analysis.[2]

---

[1] Curiously, four times in the Response, Plaintiff sets forth the text of the Tex. Lab. Code § 91.042(c), which states:

> For workers' compensation insurance purposes, a license holder and the license holder's client shall be coemployers. If either a license holder or a client elects to obtain workers' compensation insurance coverage for covered employees, the client and the license holder are subject to *Sections 406.005, 406.034, 408.001, and 411.032.*

(emphasis added); *see* Response, pp. 1, 4, 7, 9. Because that provision does not reference Section 451, it is not clear why Ramirez places such importance on it. The fact that it lists some sections of the Workers' Compensation Act and not others leads to the *expressio unius* conclusion that the legislature intended to exclude Section 451 from this coemployment concept applicable to PEOs.

There is, however, an analogous statutory provision applicable to Schneider Electric and Aerotek. It provides in part:

> For workers' compensation insurance purposes, if a *temporary employment service* elects to obtain workers' compensation insurance, the client of the temporary employment service and the temporary employment service are subject to Sections 406.034 and 408.001.

Tex. Lab. Code § 93.004(b) (emphasis added). Here, the legislature removes the coemployer concept, a clear and important difference between PEOs and temporary employment services.

[2] Plaintiff's reference to a different concept, joint employment, is likewise inapplicable. In support of her misguided argument, Plaintiff discusses a years-old summary judgment ruling that has no bearing on this case. Response, p. 5. A

## III.
## *BURTON* RELIES ON TEXAS SUPREME COURT PRECEDENT THAT RAMIREZ FAILS TO EVEN ADDRESS

Plaintiff's argument regarding *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222 (5th Cir. 2015) not being controlling (Response, p. 9) misses the point. Schneider Electric does not contend that case is controlling precedent. Instead, it is the Fifth Circuit's logic and reliance upon Texas Supreme Court case law that is compelling. Moreover, Plaintiff's argument might be persuasive if there was a Texas Supreme Court (or even a Court of Appeals) decision that concluded a Section 451 claim could be brought against a temporary staffing company's client. There is none. But there is *Burton*, a recent Fifth Circuit decision premised on Texas Supreme Court cases to find that the plaintiff *could not* maintain a Section 451 claim against the client of a temporary staffing agency. *Burton*, 798 F.3d at 243; *see* MSJ, pp. 4-5. Its reasoned opinion rests solely on Texas Supreme Court cases and is consistent with the language and the purpose of the statute encouraging workers' compensation coverage. Making an entity like Schneider Electric liable to its staffing company's employee, when a non-subscriber would not be liable, would wholly undermine the statutory scheme. *Id.*[3]

Plaintiff's second argument regarding *Burton* – that the Fifth Circuit got it wrong because of the PEO Act (Response, p. 9) – is likewise not persuasive. As with the fatal flaw in Plaintiff's main response to the MSJ, *Burton* did not involve a PEO; it involved a temporary staffing agency. Consequently, the language of the PEO Act is inapplicable.

---

summary judgment denial in a federal case with different parties and different claims is in no way binding on this Court or applicable to a Section 451 claim.

[3] Notably, the plaintiff in *Burton* made a similar co-employer argument that Plaintiff lodges here, and the Fifth Circuit rejected it. Even having found that defendants were joint employers for the separate disability discrimination claim, the Court found that, with regard to the Section 451 claim, "since Freescale [the staffing company client] is not the 'subscriber' responsible for [plaintiff's] workers' compensation coverage, the question of employment is beside the point." *Burton*, 798 F.3d at 242, n. 21.

Plaintiff's next argument – that *Burton* ignored "controlling" Texas case law – is also not persuasive. Plaintiff cites to several court decisions she claims demonstrate that the PEO Act requires finding a co-employer relationship between Schneider Electric and Aerotek. *Id.* at 10. All of those cases, however, concern the exclusive remedy of workers' compensation for an on-the-job injury (Tex. Lab. C. § 408) and none are Texas Supreme Court cases (or even El Paso Court of Appeals cases). *See* Appendix A, Chart of Cases. Schneider Electric does not dispute that if a temporary worker is injured at its worksite, the staffing agency's workers' compensation policy – and not a direct claim against Schneider Electric (or the staffing company) for negligence – is the temporary worker's exclusive remedy for the injury. *See* Tex. Lab. Code § 93.004(b). This would be true regardless of whether Schneider Electric was a subscriber as to its direct employees. *See Robles*, 591 S.W.3d at 166. That, however, has nothing to do with what is at issue in this lawsuit and, in particular, this MSJ.

## IV.
## PLAINTIFF'S ARGUMENTS ON THE MERITS ARE IMMATERIAL

As set forth herein, the MSJ focused solely on one ground – that dismissal of Plaintiff's Section 451 claim against Schneider Electric is proper because it was not a subscriber of workers' compensation benefits to temporary Aerotek employee Maria Ramirez. Plaintiff, nonetheless, spends more than half of her 27-page MSJ Response arguing the merits of her Section 451 claim. *See* Response, pp. 11-27. None of that bears on Schneider Electric's MSJ. The same is true for the hundreds of pages of exhibits Plaintiff filed with her MSJ Response.[4] The MSJ does not concern the merits of Plaintiff's claim; it concerns only whether a Section 451 claim is viable against an entity that, for the plaintiff, did not provide or subscribe to workers' compensation benefits.

---

[4] It is unclear whether Plaintiff's Response and its voluminous (and unnecessary) exhibits were ever accepted for filing by this Court.

# V.
## CONCLUSION

Schneider Electric did not provide workers' compensation benefits to Plaintiff. As a result, based on controlling case law from the Texas Supreme Court, as well as compelling case law addressing the identical issue from the U.S. Fifth Circuit Court of Appeals, her claim for workers' compensation retaliation under Section 451 fails as a matter of law.

For the reasons set forth herein, Schneider Electric respectfully requests that this Court enter summary judgment in its favor, dismissing Ramirez's claim against Schneider Electric, and award it all other remedies to which it may be entitled.

Dated: December 1, 2020        Respectfully submitted,

_/s/Andrew M. Gould_
Andrew M. Gould
Texas State Bar No. 00792541
_andrew.gould@wickphillips.com_
Molly M. Jones
Texas State Bar No. 24100271
_molly.jones@wickphillips.com_
Dana M. Hilzendager
Texas State Bar No. 24106099
_dana.hilzendager@wickphillips.com_

**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: 214.692.6200
Facsimile: 214.692.6255

**ATTORNEYS FOR SCHNEIDER
ELECTRIC USA, INC.**

## CERTIFICATE OF SERVICE

Pursuant to the Texas Rules of Civil Procedure, the undersigned attorney of record certifies that a copy of the foregoing instrument was served upon all counsel of record via the court's electronic filing system on December 1, 2020.

/s/Andrew M. Gould
Andrew M. Gould

**Cases Cited in the Response (pp. 10-11) that Plaintiff contends are "controlling" and were "ignored" by the Fifth Circuit in *Burton* in its analysis of a Section 451 claim**

| Case Name | Court | Date | Type of case | Sect. 451 Claim? | Subsequent Case History |
|---|---|---|---|---|---|
| *Brown v. Aztec Rig Equipment, Inc.*, 921 S.W.2d 835 (Tex. App. - Houston [14th] 1996) | Houston (14th) | 1996 | Exclusive Remedy | No | Superseded by Statute as stated in *Robles v. Mount Franklin Food, LLC*, 591 S.W.3d 158, 168 (Tex. App.—El Paso 2019, pet. denied) |
| *Garza v. Excel Logistics*, 100 S.W.3d 280, 284 (Tex. App. - Houston [1st] 2002) | Houston (1st) | 2002 | Exclusive Remedy | No | Overturned in part by *Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473 (Tex. 2005). |
| *Marshall v. Toys-R-Us Nytex, Inc.*, 825 S.W.2d 193, 194 (Tex. App. — Houston [14th Dist.] 1992, writ denied) | Houston (14th) | 1992 | Exclusive Remedy | No | Superseded by Statute as stated in *Pederson v. Apple Corrugated Packaging, Inc.*, 874 S.W.2d 135, 138 (Tex. App. 1994), writ denied (July 28, 1994) |
| *Gibson v. Grocers Supply, Co., Inc.*, 866 S.W.2d 757, 759 (Tex. App. — Houston [14th Dist.] 1993, no writ) | Houston (14th) | 1993 | Exclusive Remedy | No | |
| *Pederson v. Apple Corrugated Packaging, Inc.*, 874 S.W.2d 135, 136-37 (Tex. App. — Eastland 1994, writ denied) | Eastland | 1994 | Exclusive Remedy | No | |
| *Rodriguez v. Martin Landscape Management, Inc.*, 882 S.W.2d 602, 603 (Tex. App. — Houston [14th Dist.] 1994, no writ) | Houston (14th) | 1994 | Exclusive Remedy | No | |
| *Cherry v. Chustz*, 715 S.W.2d 742, 743 (Tex. App. — Dallas 1986, no writ) | Dallas | 1986 | Exclusive Remedy | No | |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Karen Ferrari on behalf of Andrew Gould
Bar No. 00792541
karen.ferrari@wickphillips.com
Envelope ID: 58777121
Status as of 11/3/2021 8:46 AM MST

Associated Case Party: Maria Ramirez

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Enrique Chavez, Jr. | | enriquechavezjr@chavezlawpc.com | 11/2/2021 2:51:42 PM | SENT |
| Michael RAnderson | | manderson@chavezlawpc.com | 11/2/2021 2:51:42 PM | SENT |
| Christine AChavez | | cachavez@chavezlawpc.com | 11/2/2021 2:51:42 PM | SENT |

Associated Case Party: Schneider Electric USA, Inc. d/b/a Schneider Electric

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Molly Jones | | molly.jones@wickphillips.com | 11/2/2021 2:51:42 PM | SENT |
| Andrew Gould | | andrew.gould@wickphillips.com | 11/2/2021 2:51:42 PM | SENT |
| Dana Hilzendager | | dana.hilzendager@wickphillips.com | 11/2/2021 2:51:42 PM | SENT |
| Noemi Lopez | | nlopez@raylaw.com | 11/2/2021 2:51:42 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Karen Ferrari | | karen.ferrari@wickphillips.com | 11/2/2021 2:51:42 PM | SENT |
| Christine EReinhard | | creinhard@sr-llp.com | 11/2/2021 2:51:42 PM | SENT |
| Dylan AFarmer | | dfarmer@sr-llp.com | 11/2/2021 2:51:42 PM | SENT |